State v. Cummings.

THE STATE OF NEBRASKA, EX REL. THE SCHOOL DISTRICT OF OMAHA, v. THOMAS CUMMINGS.

1. **Mandamus: RIGHT TO MAINTAIN.** Where by law it is made the special duty of the incumbent of a public office to perform certain ministerial duties as such officer, and such duties cannot be legally performed by any other person to the full extent required by law, a writ of mandamus will issue upon the application of any person interested to compel the performance of such ministerial duty.

2. **Liquors: WHOLESALE DEALER.** The ordinance of the city of Omaha makes it the duty of the city marshal, on the first day of each and every month, to ascertain and report to the city council the names of all persons or firms engaged in the liquor traffic in said city, giving their place of business, whether licensed or unlicensed, and to notify any unlicensed liquor dealers to at once cease the traffic, and to make complaint against all persons selling liquor without license. *Held,* That the ordinance applies to all persons engaged in the liquor traffic, and it is the duty of the marshal to comply with the requirements of the ordinance without reference to the quantity of liquor sold at each sale by the person engaged in the traffic.

2. ——: ——. The act entitled "An act to regulate the sale of malt, spirituous, and vinous liquors," etc., approved February 28, 1881, Compiled Statutes, chap. 50, commonly known as the "Slocumb" law, applies alike to all persons who are engaged in the sale of malt, spirituous, and vinous liquors. Wholesale dealers are not exempt from its provisions.

ORIGINAL application for mandamus.

*H. D. Estabrook* and *E. W. Simeral,* for relator.

No appearance for respondent.

REESE, J.

The relator seeks a writ of mandamus to the respondent requiring him to discharge certain ministerial duties imposed upon him by the ordinances of the city of Omaha, of which city he is the marshal.

The sections of the ordinance referred to are sections one and twenty-three, and are as follows:

Section 1. "No person or co-partnership of persons shall, within the limits of the city of Omaha, either by himself or by his or their agent or employe, sell or give away, upon any pretext whatever, any malt, spirituous, or vinous liquors, or any intoxicating drinks without having first complied with the provisions of this ordinance, and obtained a license as herein set forth."

Section 23. "The city marshal shall, on the first day of each and every month, ascertain and report to the city council at its first regular meeting thereof the names of all persons or firms engaged in the liquor traffic, and the place of business of each, and whether licensed or unlicensed, and shall notify any unlicensed liquor dealers to at once cease such traffic, and shall make complaint against all persons selling liquor without license."

It is alleged in the relation that "there are now, and for a long time have been, numerous persons and firms engaged in the liquor traffic in the city of Omaha who have now no license, nor have ever had; nor have they ever made application for such license, but have neglected and refused to do so; but who, notwithstanding, are now, and for a long time have been, selling and otherwise disposing of intoxicating liquors in violation of the laws of the state of Nebraska, and the ordinance herein pleaded."

The first question presented by this case is, whether or not mandamus is the proper remedy? If not, the writ should be denied. It may be said that there is a "plain and adequate remedy in the ordinary course of the law," sec. 646, civil code, and that it is not only the privilege but the duty of every good citizen of Omaha to file the necessary complaint against persons who are violating the laws of the state or the ordinances of the city; and that it is the special duty of the officers of the relator to do so in order to protect the financial

State v. Cummings.

interests of the relator, school district.    Without stop-
ping to discuss the question relating to the making of com-
plaints and conducting of prosecutions, it must be noted
that there are certain specific official duties required by the
ordinance which cannot legally be performed by any per-
son other than the marshal.    By the ordinance it is made
his duty *as marshal* to ascertain and report to the city
council on the first of each and every month the names of
all persons engaged in the liquor traffic, the place of busi-
ness of each, and whether licensed or unlicensed.    This, in
connection with the notification and complaint, is an official
duty, specially imposed upon him by law, and which no
one else can legally perform for him.    These duties are
purely ministerial.    No judicial discretion is anywhere
involved.    The ordinance says he "shall" make the re-
port, and " shall" notify such persons to cease business.
In this connection it may be observed that the ordinance
is equally explicit as to his duty in the matter of making
complaint against offenders.

Section 645 of the civil code is as follows : "The writ
of mandamus may be issued to any inferior tribunal, cor-
poration, board, or person to compel the performance of
an act which the law specially enjoins as a duty resulting
from an office, trust, or station.    But though it may re-
quire an inferior tribunal to exercise its judgment or pro-
ceed to the discharge of any of its functions it cannot con-
trol judicial discretion."    The act which is required of the
respondent is " an act which the law specially enjoins as a
duty resulting from an office."    We are wholly unable
to see why it is not within the provisions of the law above
cited and quoted.    Mandamus is evidently the proper
remedy.    *State v. Gracey*, 11 Nev., 223.    *Moses v. Kear-
ney*, 31 Ark., 261.    *State v. Doyle*, 40 Wis., 175.    Wood
on Mandamus, 19 Id., 24.    Moses on Mandamus, 14.    2
Johnson's Cases, 217, note 1.    *Comrs. v. King*, 13 Flor., 460.

The relation shows that a demand has been made upon

respondent requiring the performance of these duties, and that compliance with the demand has been refused by him. The demand and refusal are as follows:

"OMAHA, NEB., January 10, 1885.
"*To Thomas Cummings, Marshal of the City of Omaha:*

"SIR—As attorney for the school district of Omaha, I would respectfully call your attention to the fact that numerous wholesale liquor dealers are selling intoxicating liquors without a license. I would instance the Iler Distillery, Metz Brewing Company, Schlitz Milwaukee Beer Company, and others.

"I have advised my clients that such parties, though exclusively wholesale liquor dealers, are amenable to the Slocumb law, and that being so, it is your duty to ascertain the number of such unlicensed dealers, report them to the city council, and make complaint against such as fail to take out license.

"To request you to perform your duty in this behalf is the object of the present notice.

"H. D. ESTABROOK."

"OMAHA, NEB, January 10, 1885.
"*H. D. Estabrook, Esq., Attorney for the School District of Omaha:*

"DEAR SIR—Your notice of even date was duly received. I have no disposition to neglect the duties of the office which I hold, and were I certain that the wholesale liquor dealers are amenable to the so-called 'Slocumb law,' I would not hesitate to notify them to take out licenses, and to complain against them for a failure to do so. But as presently advised, I am of the opinion that wholesale liquor dealers are not intended to be included in the act, and until the matter is otherwise judicially determined, I must decline to either ascertain, report, or complain against such dealers.

"I am very respectfully yours,
"THOMAS CUMMINGS,
"*City Marshal.*"

By the foregoing it will be seen that the city marshal is of the opinion that wholesale liquor dealers are not required to obtain a license, and therefore he refuses to report them as "engaged in liquor traffic.". It is conceded by the relator that the failure of respondent to comply with the ordinance above quoted is limited to the class of dealers known as wholesale dealers, and this presents the question as to whether or not wholesale dealers are required to obtain a license under the act of 1881, in order to make their business a legal one. Or, stating it more correctly, whether or not it is the duty of respondent to report such persons to the city council as "persons engaged in the liquor traffic," and to notify them to obtain license, and in case of their failure to do so, enter the necessary complaint.

At this point we are met with the suggestion that this proceeding is only intended to secure a construction of the liquor law of 1881 upon the question of the liability of wholesale dealers to be prosecuted as violators of its provisions, and that, as they are not parties to this action, any decision we may make will have no binding force upon them, and hence, if it should be in favor of the relator the whole question will still be open to litigation by them. This must be conceded, and it must be further conceded that this has been the law in all cases since the organization of courts of justice. Yet courts have not, as a rule, refrained from deciding cases presented to them for decision, simply because the rights or liabilities of others not parties to the action may not be bound by the adjudication of the differences between parties immediately before the court. The question now to be decided is: Is it the duty of the respondent to comply with the provisions of the ordinance, and does that duty include what are termed wholesale dealers?

Section one of the ordinance referred to was evidently passed by the city council for the purpose of carrying out and giving effect to the law of 1881, known as the "Slo-

cumb " law, and our attention must be at once directed to that act. Section eleven of the act, Ch. 50, Compiled Statutes, is as follows: "All persons who shall sell or give away upon any pretext, malt, spirituous, or vinous liquors, or any intoxicating drinks, without having first complied with the provisions of this act, and obtained a license as herein set forth, shall, for each offense, be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not less than one hundred dollars nor more than five hundred dollars, or be imprisoned not to exceed one month in the county jail, and shall be liable in all respects to the public and to individuals, the same as he would have been had he given bonds and obtained a license as herein provided." The language of this section is sweeping in its nature. No exemptions or qualifications are made. "All persons who shall sell " without a license, is limited to no class of " persons." " All " is defined by Webster to be " every one, or the whole number of; the whole quantity, extent, duration, amount, quality or degree of." Webster's Unab. Dic. Again, "the whole number; every one; every part; whole time; whole extent." Craig's Universal Dictionary.

As there are no exceptions in this section, we next look to the whole act, and in that we find no words of limitation and no exceptions. As decided by this court in *Pleuler v. The State*, 11 Neb., at page 556, the act is strictly a prohibitory law without action by local authorities. No person is authorized to sell liquors unless he obtains that authority from local tribunals. The letter of the act itself furnishes no escape for any person who sells " malt, spirituous, or vinous liquors, or any intoxicating drinks." Section eleven, however, as amended in 1883, exempts from its provisions persons who may desire to sell wine made from grapes grown or raised by themselves on their own land, provided they sell in quantities of not less than one gallon. This amendment can have but little bearing upon the ques-

tion now under consideration, except that it might indicate a legislative interpretation to the extent that such an exemption was necessary without reference to the quantity sold at one time. The prohibition is continued as against them unless they sell in large quantities. In that case it is removed. This is the only discrimination we have been able to find in the act.

But it may be contended that the spirit of the act under consideration is not in harmony with what may be deemed its letter, and that it was the legislative intent that its provisions should only apply to what are familiarly known as saloon keepers. The usual method adopted by courts for ascertaining the legislative intention is by reference to the language adopted by the law maker. By the application of this rule we have seen there is no discrimination between persons who sell liquor. The person who sells forty gallons without a license is not less guilty than the one who sells one gill. It is true that laws have been enacted in many states which are limited in their effects to retail dealers. But in such cases it is clearly so expressed or implied by the acts themselves. Such acts are usually made to apply to keeping " dram shops," " tippling houses," " selling liquor to be drank upon the premises," "selling liquor in less quantity than one gallon," etc., etc. If not expressed in such laws it is clearly to be inferred that they can only refer to retail dealers. But such is not the law of this state, and no such implication can arise. It may be asked if it can be maintained that wholesale dealers are required to procure the certificate of character, execute the bond, give notice of application, and run the risk of being met by remonstrances followed by "hearing," "appeal," etc., the same as the saloon keeper? We answer: Such is the law. As was held in *Pleuler v. The State,* the act is for the purpose of regulating a traffic, "believed by the legislature to be pernicious in its effects upon society." In the eyes of the law the person who would engage in this

"traffic" must take his place among others who are engaged in the same business and procure the license as others do, else he is a criminal as others are.

It is not for the courts to say whether the law is right or wrong, provided it is a constitutional enactment. It is simply their duty to declare the law as they find it.

It is clearly the duty of respondent to report to the council " the names of all persons or firms engaged in the liquor traffic" as required by the ordinance, without regard to the quantity being sold by such person at each sale. If he is " engaged in the traffic" it is enough for the marshal to know to apprise him of his whole duty.

A peremptory writ of mandamus is allowed.

WRIT ALLOWED.

THE other judges concur.