ENTERPRISE BREWING COMPANY & another *vs.* GEORGE
GRIME & another, assignees.

Bristol.    October 24, 1898. — May 17, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Mortgage — Foreign  Corporation — License to sell Intoxicating Liquors
in this Commonwealth.*

A foreign corporation organized under the laws of another State may legally sell
intoxicating liquors in this Commonwealth under a license granted under Pub.
Sts. c. 100.

CONTRACT, to recover from the assignees of an insolvent es-
tate the proceeds of a sale of certain mortgaged property, held
to await the determination of the question as to the validity of
the mortgage given by the insolvent debtors to the plaintiff
brewing companies.   Trial in the Superior Court, before *Ham-
mond*, J., who, having directed a verdict for the defendants, re-
ported the case for the determination of this court.   The facts
appear in the opinion.

*J. F. Jackson & J. M. Morton, Jr.*, for the plaintiffs.

*J. W. Cummings, (C. R. Cummings & A. S. Phillips*, with
him,) for the defendants.

BARKER, J.   The plaintiffs have a mortgage, the consideration
of which was the price of intoxicating liquors sold by them in the
city of Fall River to a firm of which the defendants are assignees
in insolvency.   In the court below, it was held that the plaintiffs
were not authorized to sell in this Commonwealth, and that the
mortgage given in consideration of such sales was illegal.   The
case is here upon a report after verdict for the defendants.   If
the ruling was correct, judgment is to be entered for the de-
fendants; otherwise, the verdict is to be set aside, and the case
is to stand for trial.

The plaintiffs are corporations chartered in Rhode Island for the purpose of manufacturing and selling beers, ales, and malt liquors. The Enterprise Brewing Company had a selling place in Fall River, and there sold the liquors which are the consideration of its mortgage note. It held annually a license from the proper licensing board to sell intoxicating liquors in Fall River. The date of the mortgage was September 15, 1896. On October 26, 1896, the corporation filed in the office of the commissioner of corporations a power of attorney, and a statement of its capital, and on December 3, 1897, a copy of its charter and a financial statement, all with the acceptance of the commissioner. The firm of mortgagors was declared insolvent on November 2, 1896.

It is agreed that the rights of the other plaintiff, the Narragansett Brewing Company, shall stand or fall with those of the Enterprise Brewing Company.

The defendants' contentions are that foreign brewing corporations cannot lawfully engage in business in this Commonwealth, and that no corporation, domestic or foreign, can be licensed to sell intoxicating liquors here.

1. The argument for the contention that foreign corporations chartered to manufacture and sell intoxicating liquors cannot lawfully do business here is based upon the provisions of St. 1894, c. 381, § 1, the first sentence of which is as follows: "It shall be unlawful for any corporation, association, or organization of another State or country, except life insurance companies as provided in chapter two hundred and fourteen of the acts of the year eighteen hundred and eighty-seven, to engage or continue in the Commonwealth in any kind of business the transaction of which by domestic corporations is not permitted by the laws of the Commonwealth."

There are some circumstances which might seem to indicate that the Legislature intended by this statute to deal only with corporations and other organizations engaged in the business of insurance. The exception of certain life insurance companies in the sentence quoted so indicates. The next sentence cites the general law requiring every foreign corporation having a usual place of business here to appoint the commissioner attorney for service of process and to file a copy of its charter and a statement of its capital stock, and the Massachusetts Insurance Act,

St. 1887, c. 214, the general act relating to assessment insurance, St. 1890, c. 421, and an act relating to fraternal beneficiary organizations of other States, St. 1892, c. 40. The bill which became St. 1894, c. 381, was reported on the suggestion and recommendation of the insurance commissioner. House Journal, 1894, pp. 768, 858, 922, 988, 1544. The bill was, however, reported by a joint special committee on the revision of the corporation laws. Assuming, therefore, that the intention of the Legislature was as broad as the language of the statute, we yet think the statute does not make it illegal for a foreign corporation to sell intoxicating liquors in this Commonwealth. Domestic corporations are nowhere forbidden to engage in that business. The Legislature has heretofore chartered corporations to engage in the manufacture and sale of intoxicating liquors. St. 1826, c. 36. St. 1875, c. 164. St. 1879, c. 121. St. 1883, c. 199. It has also granted to hotel companies charters which do not restrict their grantees from engaging in the business of keeping a hotel, and which contain indirect or express implications that the corporation may sell intoxicating liquors in a lawful manner as part of their business. For instance, the corporation now the United States Hotel in Boston was chartered by St. 1824, c. 103, and made perpetual by St. 1824, c. 131, the charter not restricting the business. At that time the sale of liquors was an incident to the business of keeping a hotel, and hence an implication, though indirect, that the corporation may sell intoxicating liquors in a lawful manner in connection with its hotel business. So in St. 1849, c. 166, incorporating the Fitchburg Hotel Company, there is no restriction against keeping a hotel, and the charter provides that, " if any ardent spirits or intoxicating drinks of any kind whatever shall be sold by said company, or by their agents, lessees, or persons in their employ, contrary to law, in any of said buildings," then the act shall be void. This is a direct implication that the corporation may sell intoxicating liquors in accordance with law. An entirely similar charter was given to the Groton Hotel Company by St. 1850, c. 266. It is true that domestic corporations cannot be organized under our general law for distilling or manufacturing intoxicating liquors. Pub. Sts. c. 106, §§ 7, 14. But there is no express prohibition against the formation under general laws of corporations

to carry on the business of selling intoxicating liquors.    On the contrary, the statute authorizes the formation of corporations for the purpose of carrying on any lawful business, with certain specified exceptions, in which that of selling intoxicating liquors is not included.    When there were no general laws under which domestic business corporations could be organized, such corporations incorporated by special acts could carry on in a lawful manner the business for which they were chartered, and they may do so now.    See *Stevens* v. *Pratt*, 101 Ill. 206.    As there are domestic corporations which, under their charters, have rights to sell intoxicating liquors, the business is one the transaction of which by domestic corporations is permitted by our laws, and the sale of such liquors by the plaintiffs in Fall River was not made illegal by the provisions of St. 1894, c. 381.

The failure of the plaintiffs to comply, until after taking their mortgage, with the provisions of St. 1884, c. 330, requiring foreign corporations before doing business here to file certain documents with the commissioner of corporations, is immaterial, because the provisions of the statute are merely directory, and a failure to comply with them does not render the contracts of the corporation made here illegal.    *Rogers Co.* v. *Simmons*, 155 Mass. 259.

The case of *Claflin* v. *United States Credit System Co.* 165 Mass. 501, is not in point, because the business transacted by the defendant in that case was one prohibited to all insurers by the provisions of the Massachusetts Insurance Act of 1887.

2.  We cannot accede to the contention that the plaintiffs' business in Fall River was illegal because no corporation can be licensed to sell intoxicating liquors under the provisions of Pub. Sts. c. 100.    While most, if not all, civilized powers have found it necessary, either for purposes of police or of revenue, to regulate this traffic, it is not *malum in se.*    Even when the so called prohibitory statutes were in force here, the Legislature found it necessary to provide for the carrying on of the traffic to some extent by public agencies.    Of course it cannot be contended that sales legal, if made by natural persons, are illegal merely because made by a corporation.    The defendants' argument is that our statute does not mention corporations as such, and that its penalties provide for, and in some instances require, imprison-

ment, to which a corporation cannot be subjected, and that therefore the statute does not permit the licensing of corporations.

But the key and the foundation of our statute, without which the traffic in liquors would be free, is the prohibition contained in Pub. Sts. c. 100, § 1: "No person shall sell, or expose or keep for sale, spirituous or intoxicating liquor, except as authorized in this chapter." If the word "person" in the chapter does not extend to and include corporations, they are not included in the prohibition, and sales by any corporation are not illegal, although *ultra vires* when the charter does not extend to the traffic. But in the construction of all statutes, unless inconsistent with the manifest intention, or repugnant to the context, the word "person" may extend and be applied to bodies corporate. Pub. Sts. c. 3, § 3, cl. 16. The consideration that the prohibition of the statute is expressed by the use of the word "person" alone is of great force in support of the conclusion that throughout the statute that word extends to corporations as well as to natural persons. This conclusion is strengthened by other considerations. As has been seen, we have corporations, whose charters have been cited, with powers which authorize their grantees to deal in liquors. In two of them, either granted or amended by the Legislature since the adoption of the laws now re-enacted in Pub. Sts. c. 100, brewing corporations are expressly made subject to the laws in regard to intoxicating liquors in force when the charter was granted, or thereafter in force. See St. 1875, c. 99; St. 1879, c. 121; St. 1883, c. 199. Corporations may, no doubt, be formed under Pub. Sts. c. 106, § 14, to carry on the druggist business or the apothecary business. There are provisions for licenses both to druggists and to apothecaries as such, without the addition of any words to restrict such licenses to natural persons. Pub. Sts. c. 100, §§ 2, 3, 10.

The provision that licenses may be refused to unfit persons, in Pub. Sts. c. 100, § 8, does not show that natural persons only are meant. Many corporations are certainly unfit to sell intoxicating liquors. Many clubs are incorporated. But St. 1887, c. 206, authorizing club licenses, makes no distinction between incorporated clubs and those existing under voluntary associations, and so supports the conclusion that licenses may be granted

to corporations.   We see no reason to doubt that corporations may be formed under the general law, and licensed to engage in the business of a common victualler, and if so it is not made impossible by Pub. Sts. c. 100, § 9, cl. 5, as the defendants contend, for a corporation to hold a license of the first, second, or third class.   However this may be, if the contention is sound, it is immaterial to the question whether corporations can hold licenses of the fourth class, to sell liquors of any kind not to be drunk on the premises.

It is true that corporations cannot be imprisoned, and that one of the penalties provided by the law is imprisonment, and that in some cases imprisonment is imperative.   This, however, is but one circumstance to be weighed with many in arriving at the true meaning of the statute.   Corporations can be indicted, convicted, and punished under the law by fine and by forfeiture of license.   They can act only through natural persons, and the natural persons who do the illegal acts of the corporation may be punished themselves also, and by the full penalties of the statute.   If, as we construe the law, corporations are included in its prohibitions and its authorizations, the impossibility of their imprisonment was no doubt considered by the Legislature, and in view of the liability of the natural persons who could be punished for the illegal act of the corporation, the Legislature was content to provide the punishments which it did.   It is not uncommon to provide that offences which may be committed by corporations as well as by natural persons shall be punished by fine and imprisonment.   See Pub. Sts. c. 102, §§ 62–64, 69, 71.

Upon the whole, we think that such corporations as by their charters are permitted to sell intoxicating liquors may be licensed under our statute, and comity between this Commonwealth and Rhode Island justifies us in holding that the plaintiffs, being authorized by their charters to conduct that business, and not prohibited from it by our laws, may legally hold a license here, and here transact the business of selling intoxicating liquors. See *Portsmouth Livery Co.* v. *Watson,* 10 Mass. 91; *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Cowell* v. *Colorado Springs Co.* 100 U. S. 55; 2 Kent Com. 285.

*Verdict set aside, and case to stand for trial*