W. S. ROHRER, APPELLANT, v. HASTINGS BREWING COMPANY, APPELLEE.

FILED DECEMBER 17, 1908.   No. 15,704.

1. **Cities: LIQUOR LICENSES: WHEN MAYOR MAY VOTE.** The mayor in cities of the second class having more than 5,000 and less than 25,000 inhabitants has the right to cast a deciding vote in a contest over an application for a liquor license in case of a tie vote of the council.

2. **Statutes in Pari Materia.** Chapter 82, laws 1907, which prohibits corporations from being interested in any manner in the retail traffic in intoxicating liquors, is *in pari materia* with the Slocumb law (Comp. St. 1907, ch. 50).

3. ———. All statutes *in pari materia* must be taken together and treated as having formed in the minds of the enacting body parts of a connected whole, though considered at different dates.

4. **Statutes:** CONSTRUCTION. Long-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law.

5. **Intoxicating Liquors:** LICENSE: CORPORATIONS. A corporation may lawfully receive a license to vend at wholesale intoxicating liquors in Nebraska, but no such authority exists for licensing a corporation to engage in the retail traffic in such liquors.

APPEAL from the district court for Adams county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*J. W. James* and *R. A. Batty,* for appellant.

*Tibbets, Morey & Fuller* and *W. F. Button, contra.*

*John C. Cowin, L. D. Holmes, Isidor Ziegler* and *Rich, O'Neill & Gilbert, amici curiæ.*

ROOT, C.

Hastings is a city of the second class having more than 5,000 and less than 25,000 inhabitants. The Hastings Brewing Company is a local corporation, and in April of this year it applied to the council of said city for license to vend intoxicating liquors. The petitioners alleged "that said company and its officers are all of respectable character and standing and *bona fide* residents of said city and state." Defendant filed objections to the granting of said license, but, upon the hearing before the council, stipulated with the applicant that all of the objections specified in the remonstrance should be waived, except the following: "Under the laws of the state and the ordinances of the city, can a liquor license be legally issued to a corporation?" Remonstrant also reserved the right to

deny the authority of the mayor to cast a deciding vote in case of a tie vote of the council in said proceedings. Four councilmen voted "aye" and four "nay" upon every motion relating to said remonstrance and application, and in each instance the mayor voted in favor of the applicant, and thereby a license was issued to it. Upon appeal to the district court the action of the excise board was affirmed, and remonstrant appeals.

1. If the mayor did not have authority to vote upon the remonstrance and the application the license issued is void. Section 7175, Ann. St. 1907, provides: "The corporate authorities of all cities and villages shall have power to license, regulate and prohibit the selling or giving away of any intoxicating, malt, spirituous and vinous, mixed or fermented liquors within the limits of such city or village," etc. In *State v. Andrews*, 11 Neb. 523, we held that "the corporate authorities" were the mayor and council, and that, until those officers, by ordinance duly passed, provided for the licensing of said traffic, a permit could not be issued to vend intoxicating liquors within the limits of any municipality. In *Martin v. State*, 23 Neb. 372, we further held that the statute would be satisfied by the enactment of a general ordinance concerning said traffic, and that thereafter the authorities might act by resolution. Section 8518, Ann. St. 1907, provides: "The mayor shall preside at all the meetings of the city council, and shall have a casting vote when the council is equally divided, except as otherwise herein provided, and none other." Section 8519 directs that "the mayor shall have the power to approve or veto any ordinance passed by the city council, and to approve or veto any order, by-law, resolution, award of or vote to enter into any contract, or the allowance of any claim," with the further provision that the council may pass by an affirmative vote of two-thirds of all the members elected to the council any of said measures thus vetoed. Section 8533 enacts: "On the passage or adoption of every resolution or order to enter

into a contract, or accepting of work done under contract, by the mayor or council, the yeas and nays shall be called and entered upon the record, and to pass, or adopt any by-laws, ordinance, or any such resolution, or order, a concurrence of a majority of the whole number of the members elected to the council shall be required." Section 8536 also provides that all ordinances or resolutions for the appropriation of money shall require for their passage or adoption the concurrence of a majority of all members elected to the council. It would seem from an inspection of the statutes cited that it requires an affirmative vote of a majority of all of the councilmen of the city of Hastings to appropriate or expend its money, or to execute a contract in the name of said municipality; that the mayor may veto any general ordinance passed by the council, or that he may veto any resolution, ordinance or by-law passed by the council to create a liability against said city or to expend its funds; and that in such cases two-thirds of all the members elected to said council may pass any such measures over the mayor's veto. As to every other act of the council, except the passage of ordinances, the mayor may vote in case of a tie vote of the councilmen. The passage of a resolution overruling a remonstrance to an application for a liquor license, or granting such license, does not come within any of the exceptions direct or implied in the statute, and therefore the mayor had authority to cast the deciding vote.

2. The next question is whether, under any circumstances, a corporation may be licensed to sell intoxicating liquors in Nebraska. This traffic is not a right or privilege guaranteed or protected under the constitution of the United States or the constitution of the state. *Bartemeyer v. Iowa*, 18 Wall. (U. S.) 129; *Beer Co. v. Massachusetts*, 97 U. S. 25; *Crowley v. Christensen*, 137 U. S. 86; *Mette v. McGuckin*, 18 Neb. 323. The legislature may, therefore, entirely prohibit that traffic, or select natural, to the exclusion of artificial, persons as licensees. We have repeatedly held that the Nebraska liquor law is prohibitive

as to all persons not within its exceptions. *Brown v. State,* 9 Neb. 189; *Pleuler v. State,* 11 Neb. 547; *State v. Cummings,* 17 Neb. 311; *Martin v. State,* 23 Neb. 371.

Is a corporation within those exceptions? The statutes now in force concerning said traffic are the result of evolution and slow growth. The territorial legislature in 1855 prohibited the manufacture or disposition of intoxicating liquors as a beverage (act March 16, 1855; laws 1855, p. 158), and the criminal code made it unlawful to furnish such liquors to Indians or intoxicated persons. The act of November 4, 1858 (laws 1858, pp. 256-260), clothed county commissioners and the authorities of incorporated towns and cities with power to license said commerce upon condition that the applicant for license comply with certain stipulations, one of which was that at least ten freeholders of the township wherein the applicant resided should file with the county clerk a petition to the effect that said applicant was "a man of respectable character and standing, and a resident of the territory." This act was included in the criminal code of the revised statutes of 1866 as chapter 29 thereof. A few sections were added in said revision; but, with one or two immaterial changes in composition, chapter 29 aforesaid is a copy of the act of November 4, 1858. In 1873 chapter 29, *supra,* was carried into the general statutes as chapter 58, secs. 572-590, thereof. The Slocumb law of 1881 (Comp. St. 1881, ch. 50) is a consolidation of the laws theretofore enacted, with some additions to meet possible deficiencies that may have developed in the administration of the law. Sections 7150, 7159, 7160, 7161, 7165, 7166, 7167, 7168, Ann. St. 1907, reproduce, in some instances in identical language, the text of sections 572, 574, 575, 576, 577, 578, 579, 581, ch. 58, Gen. St. 1873, being part of the criminal code thereof. Sections 7150, 7152, 7153, and 7156, Ann. St., 1907, are to all intents the same as sections 1, 2, 3 and 4, act February 25, 1875 (laws 1875, p. 24), relating to intoxicating liquors. Preceding the enactment of the Slocumb law the excise board might ac-

cept a bond of $500 and a license fee of $25. The vendor's liability and that of his bondsmen was to respond to the damages accruing because of his *retail* traffic. This distinction was eliminated in 1881, making the bondsmen liable for all damages growing out of said traffic. The penalty in the bond was fixed at $5,000, and the license fee at not less than $500. Thereby it seems to us that the legislature intended to restrict and safeguard the wholesale as well as the retail traffic in such liquors. In 1885, in *State v. Cummings,* 17 Neb. 311, we issued a writ to the city marshal of Omaha compelling him to enforce the Slocumb law against the wholesale liquor dealers in said city, some of whom, we are of opinion, appeared to have been corporations. We think that we may take judicial notice of the fact that at the time of the enactment of the Slocumb law corporations were, and continuously thereafter have been, engaged in the business of manufacturing malt and spirituous liquors in Nebraska, and selling the same at wholesale. So far as we are advised, the administrative officers and those officials in the state whose duty it has been to enforce the liquor laws have generally considered corporations eligible to engage in such wholesale business. The conduct of those officials is entitled to some consideration in interpreting the statute. *State v. Holcomb,* 46 Neb. 88; *State v. Sheldon,* 78 Neb. 552; *State v. Sheldon,* 79 Neb. 455. We do not believe that it was the policy or intention of the legislature to destroy the business of those corporations, while permitting individuals to engage therein; and if, considering all of the legislation upon this subject, there is a reasonable distinction between the retail and wholesale business of selling said liquors, and the various acts upon said subject warrant the conclusion that a corporation may lawfully receive a license to sell said liquors at wholesale, although not at retail, we ought not at this late day to reverse a construction given said statutes for almost a generation past.

In 1907 the legislature enacted the "Gibson Act" section 7194, Ann. St., which prohibits every person or "corpora-

tion" engaged in the manufacture of malt, spirituous or vinous liquors, or in the wholesale traffic thereof, from being in any manner interested in the business of retailing such liquors. This act is in terms supplemental to the Slocumb law, and receives its vitality from the title of the earlier act. While this statute does not specifically authorize a corporation to engage in the wholesale traffic in such liquors, it by implication recognizes that such business does exist. The Slocumb law and the Gibson act are clearly *in pari materia,* and they must be considered together and treated as having formed in the minds of the enacting body parts of a connected whole, though considered at different dates. 2 Sutherland (Lewis), Statutory Construction (2d ed.), sec. 448; *Chicago, R. I. & P. R. Co. v. Zernecke,* 59 Neb. 689.

We must further presume that the legislature intended every provision of the statute to have a meaning. *Ford v. State,* 79 Neb. 309. To construe the statute as contended for by remonstrant we must eliminate the word "corporation" therefrom, and counsel recognize that fact by suggesting that the word was used inadvertently by the legislature; but we cannot so hold from an inspection thereof, or from any history within our knowledge of the various acts on the subject of intoxicating liquors. Counsel argue with great force that character is an attribute of a natural person, and that it cannot attach to an artificial one. We are of opinion that in a qualified sense aggregations of individuals may have a character; that the term may be applied intelligently to a community and to a corporation; that the specific acts of the individual members may be so identified with the greater whole as to give to the collection a character. It has been quite generally held that to rebut testimony to the effect that an applicant for a saloon license was a man of respectable character and standing, specific acts might be shown to prove his unfitness, as that he has violated the excise law, or maintained a gambling resort, or has committed any other act in violation of law, or repugnant to the moral sense of the community. *Stock-*

*well v. Brant,* 97 Ind. 474; *Hardesty v. Hine,* 135 Ind. 72; *Whissen v. Furth,* 73 Ark. 366, 84 S. W. 500; *Groscop v. Rainier,* 111 Ind. 361; *Watkins v. Grieser,* 11 Okla. 302, 66 Pac. 333. Corporations may be prosecuted under the criminal law in Nebraska, and, although the corporation cannot be confined within prison walls, it may be fined, and, as all of its acts must be performed by natural persons, those individuals would also be subject to prosecution for violations of the excise law, even though they acted in the name of the corporation. An opportunity, therefore, would be presented for double punishment, to fine both principal and agent, with the possibility of imprisonment for the latter. *Enterprise Brewing Co. v. Grime,* 173 Mass. 252; *Overland Cotton Mill Co. v. People,* 32 Colo. 263; 105 Am. St. Rep. 74; *Southern Express Co. v. State,* 1 Ga. App. 700, 58 S. E. 67; *Stewart v. Waterloo Turn Verein,* 71 Ia. 226, 60 Am. Rep. 786.

*State Electro-Medical Institute v. State,* 74 Neb. 40, is cited as sustaining the proposition that a corporation may not be licensed to transact business. It is true that we said in said case concerning a physician's license that the qualifications of a medical practitioner are personal to himself, and that a corporation could not possess them. But the wholesale traffic in intoxicating liquors is commercial in its nature. *Enterprise Brewing Co. v. Grime, supra; People v. Heidelberg Garden Co.,* 233 Ill. 290. The retailer of strong drinks occupies a different relation to the public and said traffic than does the wholesaler. He is presumed to exercise personal control, either by himself or that of his servants under his personal supervision, of the distribution of said liquors to the consumer. The temptation to sell his goods to minors, Indians or intoxicated individuals, to adulterate his liquors, and dispose of them on Sundays and on election days, is ever present. It was the purpose of the legislature to restrict that traffic to respectable men of good character, who would obey the law, rather than the promptings of avarice in conducting said business. We are of opinion that the

legislature did not intend that a corporation or joint association should be permitted to enjoy the privileges of a license to sell intoxicating liquors at retail in Nebraska.

The record in this case is meager, but we infer therefrom, and from the argument of counsel, that the brewing company was not licensed to engage in the retail traffic in intoxicating liquors. If we were not thus satisfied, we would reverse this case and instruct the district court to cancel said license. Nor would that license, if uncanceled, shield said corporation from prosecution if it attempted to engage in said retail traffic.

After a careful and deliberate consideration of all of the legislative acts concerning said traffic and the conduct of the various officers whose duty it has been for the past 20 years to enforce those laws, we conclude that a corporation may be licensed to sell intoxicating liquors at wholesale in Nebraska. We therefore recommend that the judgment of the district court be affirmed.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.