## State of Maine *vs.* Joseph E. N. Bohemier.

### Androscoggin.    Opinion March 5, 1902.

*Corporations.   Const. Law.   Police Power.   Physicians and Surgeons.   Criminal
Practice.   U. S. Const. Art. 1, § X, Par. 1.   R. S., c. 46, § 23.
Stat. 1895, c. 170.   Spec. Laws, 1868, c. 597.*

1.  The act of 1895, c. 170, entitled "An act to regulate the practice of medicine and surgery" is within the legislative power.
2.  There is nothing in the charter of the Maine Eclectic Medical society, c. 597 of the special laws of 1868, which exempts its members or licensees from the operation of the act of 1895, c. 170.
3.  Said charter does not contain any express limitation of the power of the legislature reserved in R. S., c. 46, § 23; hence the legislature has full power to amend, alter or repeal said charter at any time.
4.  That the act of 1895, c. 170, in terms exempts from its operation "a physician or surgeon who is called from another state to treat a particular case, and who does not otherwise practice in this state" does not bring the act in conflict with the XIVth amendment to the United States constitution.   No arbitrary or unjust discrimination appears to be made by that provision.
5.  *Semble*, that the law court will not consider a case of felony on report, but only after plea of guilty or verdict of guilty.

On report.    Judgment for the state.

Indictment for practicing medicine and surgery without registration.

The case is stated in the opinion.

*W. B. Skelton*, county attorney, for State.

*H. L. Whitcomb*, for respondent.

Sitting:    Wiswell, C. J., Emery, Whitehouse, Strout, Peabody, JJ.

Emery, J.    The defendant, a resident of this state, was indicted for practicing medicine and surgery for hire within this state without being registered by the State Board of Registration of Medicine and Surgery as required by c. 170 of the Public Laws of 1895, entitled

"An act to regulate the practice of medicine and surgery." He formally admits of record that he did so practice without being thus registered. He also concedes, or at least does not question, the constitutional power of the legislature, in the exercise of the police power, to regulate the practice of medicine and surgery within this state, and even to the extent of requiring all persons thereafter proposing to practice medicine or surgery for hire to be registered and licensed as provided in this statute. *Dent* v. *West Virginia,* 129 U. S. 114; *State* v. *Curran,* 87 N. W. R. 561, (Wis.)

The defendant claims, however, that this particular statute is inoperative against him personally for two reasons.

I. Before the passage of the statute in question he had obtained from the Maine Eclectic Medical Society, a corporation chartered by the State, by c. 597 of the special laws of 1868, a license to practice medicine and surgery for hire within this State. His argument is, that by incorporating the Maine Eclectic Medical Society with "such powers and privileges as pertain to other like corporations" the State contracted with the society and its regular licensees to permit them to practice medicine and surgery in this State without being subject to any additional rules or limitations not imposed by the society itself; and that the act of 1895, c. 170, impairs the obligation of this contract.

We cannot find in the special act of 1868, c. 567, incorporating the Eclectic Society, any words importing a contract with the society or its members that any of its members or licensees shall be exempt from such rules and limitations or conditions, as the legislature might from time to time find necessary to impose upon the practitioners of medicine and surgery, for the better protection of the health of the people. We find no such words in any charter of any medical society. We find in none of them any stipulation of any kind that its members may for all time practice medicine and surgery unrestrained by the police power of the legislature.

But, if there were any such stipulation or contract expressed or implied in the charter, it was revocable at the pleasure of the legislature. The statute R. S., c. 46, § 23, first enacted in 1831, and

declaring that "acts of incorporation may be amended, altered or repealed by the legislature as if express stipulation were made in them, unless they contain an express limitation," was in existence when the Maine Eclectic Medical Society was incorporated in 1868, and that act of incorporation contains no express limitation. The legislature, therefore, reserved full power to revoke any privilege therein granted. Hence, if the act of 1895, c. 170, did rescind any agreements made in the act of incorporation of the society, it does not impair the obligation of any contract. *Tomlinson* v. *Jessup,* 15 Wall. 454; *State* v. *Maine Central R. R. Co.,* 66 Maine, 488.

II.   In § 10, of the act of 1895, c. 170, it is provided that the act shall not apply "to a physician or surgeon who is called from another state to treat a particular case and who does not otherwise practice in this state." The defendant contends that this is a discrimination against residents of this state in favor of those of other states which is forbidden by the XIVth amendment to the constitution of the United States, and which therefore destroys the whole act.   In support of this contention he cites *State* v. *Montgomery,* 94 Maine, 192, 80 Am. St. Rep. 386, and several other similar cases. All the cases cited, however, arose out of alleged discriminations in matters of business, trade or manufactures and outside of the police power of a state. They were also cases in which the state had attempted to put special business burdens on citizens of other states which it did not impose on its own citizens.

The XIVth amendment does prohibit arbitrary discrimination between persons, or fixed classes of persons, such as that based on color, or race, or nationality, or state citizenship. It does not prohibit reasonable discrimination based on the requirements of the public health or morals. In this legislation (Act of 1895) there is no attempt at oppression of any fixed class of people, nor at denying equal rights to any fixed class. It is purely police legislation, designed solely for the promotion of the health of all the people within the state of whatever color, race, or citizenship. To effectuate this purpose, it requires all persons practicing or proposing to practice "medicine or surgery within this state for gain or hire" (i. e. as

a business) to furnish the statutory evidence of their qualifications." All persons within this class, whether white or black, citizens or aliens, have the same rights and duties without any discrimination between them. The defendant admits he is within this class and he does not show any discrimination against him in favor of any other person in the same class.

The statute, however, still in the interest of the health of the people, allows a physician or surgeon to be called from another state to treat a particular case without first applying for registration and certificate under the statute, provided he does not otherwise practice in this state. Here is another and distinct category from that above named. The defendant is not within this class because he is otherwise practicing in this state. The distinction made by the legislation between the two classes is certainly not arbitrary. It is one clearly required by circumstances and by the purpose of the act, viz: the health of the people. It does not break against the XIVth amendment nor against any other constitutional provision to which our attention has been called. *Dent* v. *West Virginia*, 129 U. S. 114; *State* v. *Curran*, 87 N. W. Rep. 561, (Wis.)

III. The offense with which the defendant is charged being a misdemeanor only, we have taken cognizance of the case on report. Were the offense a felony, we might not feel authorized to do so until there had been a plea of guilty or a verdict of guilty. According to the terms of the report the entry should be,

> *Judgment for the state.*
> *The respondent to be sentenced.*