### STATE OF MAINE *vs.* CHARLES W. MITCHELL.

#### Somerset.    Opinion December 9, 1902.

*Hawkers and Peddlers.    Const. Law, XIVth Amend. U. S. Constitution.*
*Art. 1, § 1, Const. of Maine.    Stat. 1901, c. 277.*

1.  The Federal Constitution in Amendment XIV, the last clause of the first section, and the Constitution of this State in § 1 of Art. 1, affirmatively guarantee to all persons an equality of right to pursue any lawful occupation under equal regulation and protection by law, whatever the difference in their personal powers, attributes, conditions or possessions.

2.  While these constitutional provisions do not prohibit the state diversifying its legislation to meet and equalize diversities in different kinds of occupations, such diversities must really exist, inherent in the subject matter legislated upon, to justify any legislative discrimination.  A merely arbitrary classification not based on actual differences in kind is forbidden by the Constitution.

3.  The discrimination sought to be made in the Hawkers and Peddlers Act, Laws of 1901, c. 277, in the last clause of § 4, between those who own and pay taxes on a stock in trade to the amount of twenty-five dollars, and those who pay a less tax on their stock in trade (exempting the former from paying license fees, while requiring the latter to pay them) is a mere arbitrary discrimination not based on any inherent difference in kind, and offends against that equality of right established by the fundamental law.

4.  By reason of such attempted unconstitutional discrimination, no one can be required to pay the license fees named in said act, or be punished for refusing to pay them.

Appeal from the Municipal Court of Skowhegan, in Somerset County, for violating the Hawkers and Peddlers Law, Stat. of 1901, c. 277.    Judgment for defendant.

The defendant having been convicted on the following complaint, to which he demurred, appealed to the court sitting at nisi prius.

#### STATE OF MAINE.

Somerset, ss.

To the judge of our Municipal Court of Skowhegan, in the County of Somerset, in constant session for the cognizance of criminal actions.

Hiram P. Thing of Skowhegan, in the County of Somerset, and State of Maine, in behalf of said State, on oath complains, that Charles W. Mitchell late of Skowhegan in said County of Somerset at Skowhegan aforesaid in the County of Somerset aforesaid on the sixteenth day of October in the year of our Lord nineteen hundred and one, not having procured a license therefor, as provided by law and chapter two hundred seventy-seven of the Public Laws of A. D. 1901 of the State of Maine, and not then and there being a commercial agent selling goods by sample to dealers only, did then and there go from place to place in the town of Skowhegan in said County of Somerset exposing for sale and selling goods and chattels other than fruit grown in the United States, fruit trees, provisions, live animals, brooms, pianos, organs, wagons, sleighs, agricultural implements, fuel, newspapers, agricultural products of the United States, the products of his own labor or the labor of his family, any map made and copyrighted in his name, any patent of his own invention or in which he has become interested by being a member of any firm or stockholder in any corporation which has purchased the patent, to wit, selling patent medicine, against the peace of the State, and contrary to the statute in such case made and provided.

Wherefore the said Hiram P. Thing prays that the said Charles W. Mitchell may be apprehended, and held to answer to this complaint, and further dealt with relative to the same as law and justice may require.

Dated at Skowhegan, in said County of Somerset this sixteenth day of October in the year of our Lord one thousand nine hundred and one.

H. P. THING.

The grounds of demurrer set forth in the Court below were as follows:—

1    In that that the complaint in said cause charges no offense;

2    That the offense purporting to have been committed by said defendant in said complaint is not set forth with sufficient certainty;

3    That said respondent could have done all that said complaint alleges against him and yet have been guilty of no offense, nor violated any statute;

4   That chapter 277 of the public laws A. D. 1901 for the State of Maine enacts among other things in section six thereof "Any soldier or sailor disabled in the military or naval service of the United States, or by sickness or disability contracted therein, or since his discharge from service, and any person who is blind shall be exempt from paying the license fees required by this chapter," and said complaint does not negative these exceptions contained in said statute and cited above, which it should;

5   That said chapter 277 among other things enacts in section 4 thereof "But any resident of a town having a place of business therein owning and paying taxes to the amount of twenty-five dollars on his stock in trade, can peddle his goods in his own town without paying any license fee therefor", and said complaint does not negative this exception contained in said statute, which it should do; said complaint not showing but that said respondent at the time of said alleged offense was a resident of said Skowhegan, having stock of goods therein, and owning and paying taxes to the amount of twenty-five dollars on his said stock in trade, and hence not liable to the tax imposed by said chapter 277;

6   That said chapter provides among other things said sections 4 and 6 as above referred to and set out, and said complaint does not negative the exceptions therein set forth which it should, said complaint not showing but that said respondent comes within the exceptions therein, and is a soldier or sailor disabled in the military or naval service of the United States, or by sickness or by disability contracted therein, or since his discharge from service, or is blind,— or having said stock of goods and paying taxes to the amount of $25.00 being a resident of said Skowhegan at time of said alleged offense, and hence within the exceptions as contained in said sections Nos. 4 and 6;

7   Because the statute upon which said complaint is founded is in conflict with the Constitution of the State of Maine;

8   Because said statute is in conflict with the Constitution and laws of the United States;

9   Because said public laws of the State of Maine are not uni-

form, and they discriminate in favor of one class of individuals against another, and are not valid;

10 Because said public laws exempt a certain class of persons from the payment of the fees provided by law, which is unconstitutional;

11 Because said State of Maine has no right to impose a license or tax as provided by said chap. 277 laws of 1901.

And for other and sufficient causes of demurrer, said complaint is not sufficient in law, and this he is ready to verify.

The defendant's demurrer was overruled in this court below and he alleged exceptions.

The case is stated in the opinion.

*Geo. W. Gower,* County Attorney, for the State.

Counsel argued: As to the sufficiency of the complaint, Laws 1891 c. 277; *State* v. *Montgomery,* 92 Maine, 435; *U. S.* v. *Cook,* 17 Wallace, 168; Bish. New Cr. Pr. vol. 1, §§ 631, 632.

As to constitutional questions, cases cited in *State* v. *Montgomery,* 92 Maine, 436; S. C. 94 Maine, 192.

See also *Lunt's case,* 6 Maine, 412; *Spring* v. *Russell,* 7 Maine, 273; *Lord* v. *Chadbourne* 42 Maine, 429; *Opinion of Justices,* 166 Mass. 589; Stats. 1885, c. 268; 1893, c. 203; 1899, c. 2; Mass. Rev. Laws, c. 65, § 21; *People* v. *Nagle* (Cal.) 52 Am. Dec. 313; *Leavitt Railway Co.,* 90 Maine, 153.

*J. S. Williams,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, PEABODY, SPEAR, JJ.

EMERY, J. The Statute ch. 277 of the Public Laws of 1901 entitled "An Act relating to Hawkers and Peddlers" provides in § 1, that no person shall go about from town to town, or from place to place in the same town, exposing for sale or selling, certain enumerated merchandise, until he shall have procured a license so to do as thereinafter provided. Section 2 provides that the Secretary of State shall grant such license to any person who files in his office a

specified certificate of good moral character, but not to any other person. Sections 3 and 4 provide that the applicant for such license shall pay to the Secretary of State a fee of one dollar and to the treasurer of each town mentioned in his license a further sum varying from three to twenty dollars according to the population of the town. The concluding clause of § 4 is as follows:— "but any resident of a town having a place of business therein, owning and paying taxes to the amount of twenty-five dollars on his stock in trade, can peddle said goods in his own town without paying any license fee whatever."

The defendant was convicted in the Skowhegan Municipal Court of a violation of this statute and appealed to this court, where by consent he filed a demurrer to the complaint which demurrer was overruled and the defendant excepted. Among other causes, the defendant sets up as cause for demurrer that, by reason of the exemption from its operation of certain classes of persons specified in the concluding clause of § 4 above quoted, the statute denies him the "equal protection of the laws" specifically guaranteed to him by the last clause of the first section of the XIVth amendment to the United States Constitution, as well as denying him the equal right to acquire property and pursue happiness guaranteed to him by the first section of the Maine Bill of Rights.

The scope of the clause cited from the XIVth amendment, that "no State shall deny any person within its jurisdiction the equal protection of the laws," has often been considered by the Federal and State Courts and more or less conflict of opinion has been developed. Some doctrines, however, have become fairly well established. Though the words of the clause are prohibitory, they contain a necessary implication of a positive right, the right of every person to an equality before every law, the right to be free from any discriminations as to legal rights or duties a State may seek to make between him and other persons. *Strauder* v. *West Virginia,* 100 U. S. 303. In effect, the clause adds a federal sanction to the equality of right embedded in the Maine Bill of Rights. It enables the Federal Courts to enforce the right, even when the State Courts shall refuse to do so.

No one now questions that these constitutional provisions prevent

a state making discrimination as to their legal rights and duties between persons on account of their nativity, their ancestry, their race, their creed, their previous condition, their color of skin, or eyes, or hair, their height, weight, physical or mental strength, their wealth or poverty, or other personal characteristics or attributes, or the amount of business they do. It must be conceded, on the other hand, that these constitutional provisions do not prevent a State diversifying its legislation or other action to meet diversities in situations and conditions within its borders. There is no inhibition against a State making different regulations for different localities, for different kinds of business and occupations, for different rates and modes of taxation upon different kinds of occupations, and generally for different matters affecting differently the welfare of the people. Such different regulations of different matters are not discriminations between persons, but only between things or situations. They make no discriminations for or against anyone as an individual, or as one of a class of individuals, but only for or against his locality, his business or occupation, the nature of his property, etc. He can avoid the discrimination by varying his location, business, property, etc. See *Leavitt* v. *Canadian Pacific Railway Co.*, 90 Maine, 153, 38 L. R. A. 152, for a full and clear exposition of this doctrine.

But even these differentiations or classifications must be reasonable and based upon real differences in the situation, condition or tendencies of things. Arbitrary classification even of such matters is forbidden by the Constitution. If there be no real difference between the localities, or business, or occupation, or property, the State cannot make one in order to favor some persons over others. This will be made clear by a few citations of decided cases and quotations from judicial opinions. In *Pearsons* v. *Portland*, 69, Maine, 278, 31 Am. Rep. 276, a statute denying to a certain class of aliens the right of action against towns accorded to citizens of the State for damages suffered from defects in highways was held unconstitutional as denying equal protection of the laws. In *State* v. *Furbush*, 72 Maine, 493, a statutory discrimination between persons peddling goods manufactured in the State and those peddling goods manufactured out of the State, exempting the former from paying license fees, was held

unconstitutional. The business was the same, the kind of goods was the same. The difference in the place of manufacture afforded no ground for a discrimination between persons selling them. In *State* v. *Montgomery,* 94 Maine, 192, 80 Am. St. Rep. 386, a statutory discrimination between citizens and aliens, permitting the former but forbidding the latter class of persons to obtain licenses to peddle goods, was held to make the statute unconstitutional. The court said, citing several cases, "the discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges upon the same conditions. The inhibition of the XIV Amendment that no State shall deprive any person within its jurisdiction of the equal protection of the laws was designed to prevent any person or class of persons being singled out as a special subject for discriminating and favoring legislation." Hostile and favoring legislation would seem to be equally inhibited. In *Yick Wo* v. *Hopkins,* 118 U. S. 356, a city ordinance prohibiting the maintenance of a laundry in a wooden building without the consent of the board of supervisors was held unconstitutional on the ground that it enabled the supervisors to discriminate between persons arbitrarily. In *Gulf C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, a State statute requiring railway corporations to pay an attorney fee of $10, in addition to costs in certain cases, was held unconstitutional upon the ground that no such burden was placed upon other corporations or individuals in similar cases. In *Cotting* v. *Kansas City Stockyards Co.,* 183 U. S. 79, a State statute classifying as public stockyards those doing more than a certain amount of business annually and then making certain special requirements of their owners or operators was held unconstitutional upon the ground that the classification was arbitrary, not being based on any inherent difference in stockyards. The court said: "Recognizing the right of the classification of industries and occupations, we must nevertheless always remember that the equal protection of the laws is guaranteed and that such equal protection is denied when, two parties being engaged in the same kind of business and under the same conditions, burdens are cast upon the one that are not cast upon the other. This statute

is a positive and direct discrimination between persons engaged in the same class of business and based simply upon the quantity of business which each may do." In *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, a State statute forbidding certain trade combinations was held unconstitutional because of its 9th section which was as follows:— "The provisions of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser." The court quoted with approval from a prior opinion this language: "The equal protection of the laws means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or class of persons in the same place and under like circumstances."

In *State* v. *Haun*, 61 Kansas 146, 47 L. R. A. 369, quoted with approval in *Cotting* v. *Kansas City Stockyards Co.*, supra, a statute requiring corporations or trusts employing more than ten persons to pay wages in cash only, was held obnoxious to the XIVth Amendment on the ground that the classification was arbitrary. In *Fox* v. *Mohawk and Hudson River Humane Society*, 165 N. Y. 517, 80 Am. St. Rep. 767, a statute requiring owners and keepers of dogs to pay certain license fees was held void because it exempted the defendant society from paying license fees for dogs it kept. In *Sayre* v. *Phillips*, 148 Pa. 482, 16 L. R. A. 49, 24 Atl. Rep. 76, a borough ordinance requiring license fees of all peddlers except those resident in the borough was held not to be a valid exercise of the police power, but a discrimination in favor of residents and therefore void. In *State* v. *Conlon*, 65 Conn. 478, 48 Am. St. Rep. 227, 31 L. R. A. 55, a statute forbidding persons to engage in any temporary or transient business for the sale of goods in any town without obtaining a license from the municipal officers was held unconstitutional because it permitted the municipal officers to discriminate between persons. In *State* v. *Hoyt*, 71 Vt. 59, a statute requiring only peddlers of goods manufactured in the State to pay license fees was held unconstitutional, as making an arbitrary classification. The business was the same and carried on under the same conditions wherever the goods were manufactured. In *State* v. *Cadigan*, 73 Vt. 245, a statute requiring licenses of the agents of certain foreign corpora-

tions, but not requiring them of the agents of similar domestic corporations, was held unconstitutional. The classification was arbitrary, not based upon any inherent difference in the business of the two classes. In *State* v. *Hinman*, 65 N. H. 103, 23 Am. St. Rep. 22, a statute forbidding persons to practice dentistry without a .medical degree or a license from the State Dental Society was held unconstitutional because persons who were practicing dentistry prior to the year 1875 were by the statute exempted from its operation. The court said "the granting of special privileges to some of the persons engaged in the same business under the same circumstances is in contravention of that equal right which all can claim in the enforcement of the laws and in the enjoyment of liberty and the right of acquiring and possessing property." The same principle was affirmed in *State* v. *Pennoyer*, 65 N. H. 113, 5 L. R. A. 709.

In *Brown* v. *Alabama G. S. R. Co.* 87 Ala. 370, a statute giving a justice court jurisdiction of an action of tort against a railroad company for a greater sum than in similar actions against other parties, was held to be an arbitrary and hence unconstitutional discrimination against railroad companies. In *State* v. *Gardner*, 58 Ohio St. 599, 65 Am. St. Rep. 785, 41 L. R. A. 689, the first section of the statute required an examination and licensing of every plumber whether master plumber or journeyman; but the second section provided in effect that when one member of a firm, or the manager of a corporation, was so examined and licensed, the other members of the firm or the corporation should be exempt from the requirement. This was held to be an inequality of burden, arbitrarily created and hence destructive of the statute. In *Noel* v. *People*, 187 Ill. 587, 79 Am. St. Rep. 238, the statute forbade any person practicing pharmacy without a license from the State Board of Pharmacy, but empowered that board to grant or withhold such licenses at its discretion. This was held unconstitutional as authorizing a possible arbitrary discrimination between persons. In *Bessette* v. *The People*, 193 Ill. 334, the legislature undertook to divide towns into three classes according to their population only, and then to enact that the statute, (concerning licensing horse-shoers) should be operative in one class of towns, inoperative in another class, and optional with the

third class. This was held to be an arbitrary discrimination not based on any real differences, and hence unconstitutional.

Recurring now, without further citation, to the concluding clause of the fourth section above quoted from the statute under consideration, it must be apparent that its differentiation of persons who are, from those who are not, to pay license fees is not a discrimination based upon inherent differences in the nature of the business carried on, or the kind of property owned, or dealt in. Whether the person be a resident of the town or not, whether his stock in trade be large or small, whether the tax on his stock be more or less than twenty-five dollars, the business is the same. Those required to pay the license fee and those exempted in the clause quoted may expose for sale the same kind of goods and in the same localities, and they would encounter the same business conditions.

Ignoring at this time other discriminations sought to be made in the statute, it must be apparent that the discrimination between residents paying a tax of twenty-five dollars and those paying a tax of twenty-four dollars upon their stock in trade is purely arbitrary. There is no reason why the resident with the smaller or less valuable stock in trade should be required to pay license fees from which his co-resident engaged in the same business of peddling but owning a larger or more valuable stock in trade is exempt. A fortiori there is no reason for drawing the line at twenty-five dollars rather than at twenty-four or twenty-six dollars. But the inequality thus created is manifest.

Whatever the difference in personal powers, attributes, possessions or conditions, the Constitution guarantees to every person an equality of right with all other persons to pursue a lawful occupation under an equal regulation and protection by the law. Inasmuch as by the concluding clause of the fourth section of the statute in question that equality of right and equality of protection are sought to be made unequal, the statute, so far as it requires payment of license fees, must be adjudged to be in conflict with the fundamental laws and hence of no force.

It may be suggested that, even if the clause cited be unconstitutional, the rest of the statute may not be and that, the attempted

exemption being of no force, all persons, including all those persons described in that clause as well as the defendant, are equally liable to pay the license fees. It is true that in some cases one section or provision of a statute may be held unconstitutional without invalidating the whole statute, but that cannot be done when it would violate the legislative intent. In this case it evidently was the clear intent of the legislature that the persons described in the clause cited should not pay license fees in any event. That clause is more than a matter of detail. It is an integral part of the Statute and affecting all that part requiring the payment of license fees. To hold that because of the invalidity of that section the persons the legislature therein enacted should not pay license fees, must nevertheless pay such fees, is to violate a clearly expressed legislative intent; is to impose burdens the legislature explicitly declared should not be imposed.

It is further suggested that the defendant is not being prosecuted for not paying fees but for peddling without a license, and that he may never have applied for a license. It is true the prosecution is in terms for peddling without a license, but the very Statute requiring the license of this defendant imposes an unconstitutional condition of obtaining a license, viz; the payment of a license fee. The Secretary of State is not permitted to issue the license without the performance of that unlawful condition, a condition made unlawful by an arbitrary discrimination in violation of constitutional equal right.

The terms of the constitution are to be read into the statute. Without the payment of the fees the statute thus enlarged is made by its own terms inoperative as to licenses at least. Hence there is nothing left to support this prosecution. *State* v. *Montgomery,* 94 Maine, 192, 80 Am. St. Rep. 386; *Connolly* v. *Union Sewer Pipe Co.,* *supra,* (*U. S. S. C.*)

*Exceptions sustained. Demurrer sustained.*<br>*Judgment for defendant.*