*Judgment for the State.*

STATE OF MAINE *vs.* JACOB BORNSTEIN.

Androscoggin. Opinion November 2, 1910.

*Licenses. Commerce. Interstate Commerce. Constitution of Maine, Article IV, part 3, section 1. Revised Statutes, chapter 4, section 93.*

While the State may impose taxes in the form of licenses upon different occupations within its limits, such power must be exercised in obedience to the federal Constitution.

A city ordinance, providing that no person should sell or offer for sale any foreign-grown fruit from any vehicle in any public street or place of the city, unless under a written permit and payment of a license fee of $20, is a discrimination against foreign-grown fruit, and an attempt to regulate interstate commerce, which cannot be upheld by legislation enacted in the exercise of the police power of the State.

On agreed statement of facts. Defendant discharged.

The defendant was arrested on a warrant issued by the Municipal Court of Auburn, for an alleged violation of an ordinance of the City of Auburn, relating to the sale of "foreign grown fruit from any vehicle in any public street or place" in said City. The defendant pleaded not guilty but upon hearing was found guilty

and fined $10 and costs. The defendant then appealed to the Supreme Judicial Court. An agreed statement of facts was filed in the appellate court and the case then reported to the Law Court for determination.

The case is stated in the opinion.

*Frank A. Morey*, County Attorney, for the State.

*H. E. Holmes*, for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, JJ.

WHITEHOUSE, J. This is a complaint against the defendant for a violation of that part of one of the ordinances of the city of Auburn which provides that "no person . . . . shall sell or offer for sale any foreign grown fruit from any vehicle in any public street or place of the city" unless by virtue of a written permit so to do from the Board of Mayor and Aldermen or from some person by them duly authorized to grant the same; and that "any person" so licensed shall pay as a fee therefor, the sum of $20 the same to be paid to the city treasurer for the use of the city.

The case is reported to the Law Court upon the agreed statement of facts in which it is stipulated that if the foregoing ordinance is constitutional and valid, judgment shall be rendered for the State; otherwise judgment to be rendered for the defendant.

It appears from the agreed statement of facts that the defendant was engaged in the business of peddling from his cart in the streets of Auburn, certain foreign grown fruit, to wit, bananas, without having obtained the permit or license mentioned in the foregoing ordinance. Upon a complaint charging him with a violation of the ordinance, he was found guilty by the Judge of the Municipal Court and sentenced to pay a fine of $10 and costs. From this judgment and sentence, the defendant appealed to the Supreme Judicial Court.

It is contended in behalf of the defendant that the foregoing ordinance is invalid for two reasons; first, because it discriminates in terms against foreign grown fruit and is therefore an attempt on

the part of the city to regulate foreign commerce, and second, because it is in effect if not in terms, an attempt on the part of the city to raise revenue from an occupational tax, by the exercise of a power not given to the city either by the charter or by the general law.

It is provided by the Constitution of this State, Art IV, part third, section one, that "The Legislature . . . . shall have full power to make and establish all reasonable laws and regulations for the defence and benefit of the people of this state, not repugnant to this Constitution nor that of the United States." And by section 93 of chapter 4, of the Revised Statutes, cities and towns are authorized to make and enforce ordinances for the numerous purposes specified in the thirteen paragraphs comprised in that section. But it is manifest upon an examination of these several provisions of the statute, that the ordinance in question prohibiting the sale of foreign grown fruit in any public street of the city, was not enacted for any of the purposes enumerated in this section of the statute, but primarily for the benefit of tradesmen. It can only be upheld if at all, by legislation enacted in the exercise of the police power of the State as necessary to provide for and promote the safety, peace, health, morals and general welfare of the people. But while the general power of the State to impose taxes in the form of licenses upon different pursuits and occupations within its limits is not controverted, like all other powers it must be exercised in obedience to the requirements of the Federal Constitution. As stated by the Federal Court in *Welton* v. *State of Missouri*, 91 U. S. 275, "Where the business or occupation consists in the sale of goods, the license tax required for its pursuit is in effect a tax upon the goods themselves. If such a tax be within the power of the State to levy it matters not whether it be raised directly from the goods or indirectly from them through the license to the dealer; but if such tax conflict with any power vested in Congress by the Constitution of the United States, it will not be any the less invalid because enforced through the form of a personal license." That case involved the question of the validity of a statute of Missouri, discriminating in favor of goods and merchandise which were the

growth or product of that State and against those which were the growth or product of other states or countries, by requiring the payment of a license tax from vendors of the latter class of goods and requiring no such license from vendors of the former class. The statute is held to be in conflict with the power vested in Congress to regulate commerce with foreign nations and the several states. In the opinion the court further said: "It is sufficient to hold now that the commercial power continues until the commodity has ceased to be a subject of discriminating legislation by reason of its foreign character. That power protects it even after it has entered the state, from any burdens imposed by reason of its foreign origin." So in *Webber* v. *Virginia*, 103 U. S. 344, a statute in like manner required the agent for the sale of articles manufactured in other states, to, obtain a license and pay a tax therefor, while no such license was required for the sale of articles manufactured in the State; and it was held that such a statute was in conflict with the commerce clause of the Federal Constitution and was therefore void. It was further declared that "Commerce among the states is not free whenever a commodity is, by reason of its foreign growth or manufacture subjected by state legislation to discriminating regulations or burdens."

The question again arose in *State* v. *Pratt*, 59 Vt. 590, upon a statute of that State prohibiting peddlers without a license, from selling goods or merchandise, the growth or manufacture of foreign countries, and it was in like manner held that the statute was in conflict with the Federal Constitution as an attempted regulation of commerce between the States.

But it is unnecessary to multiply authorities, for the precise question arose in our own State in the case of *State* v. *Furbush*, 72 Maine, 493. That case involved the validity of a statute which authorized "goods manufactured in this state to be peddled free and exacted a license fee from those who peddled similar goods manufactured out of the state," and it was held, in obedience to the decisions of the Federal Supreme Court that such a discrimination in favor of goods manufactured in this State and against those

manufactured in other States was an attempted interference with the power vested in Congress to regulate commerce.

It is accordingly the opinion of the court that the ordinance in question is unconstitutional and void and judgment must be rendered for the defendant. · ____ *Defendant discharged.*