STATE OF MAINE *vs.* MAX COHEN.

Cumberland.     Opinion, February 11, 1935.

294

*Walter M. Tapley, Jr.*, County Attorney.

*Albert Knudsen*, Assistant County Attorney for the State.

*Harry S. Judelshon*, for respondent.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

DUNN, J. The respondent was prosecuted in the Municipal Court for Portland, and tried and convicted, on a complaint charging a violation of provisions of Revised Statutes, Chapter 46, entitled "Itinerant Vendors," but relating both to such and peddlers. The statute, in its relation to one of the questions the record presents, makes it unlawful for any person to engage in peddling merchandise, without depositing with the Secretary of State five hundred dollars, liable to attachment by creditors, as well as in security for fines and penalties, and taking out and paying for

State and local licenses, but, in Section 26, exempts, with certain others, "...peddlers from vehicles, any of whom are bona fide residents of this state or of any other state or country whose laws impose no burden upon citizens of this state engaged in like business within their borders". The quoted words were enacted by way of amendment. 1919 Laws, Chap. 129. Other terms of the statute will be stated when important for purpose.

From the judgment and sentence of the Municipal Court, respondent entered an appeal to the Superior Court. In that court, the attorneys for the prosecution and defense agreed on a statement of facts. The judge thereupon reported the case for the Law Court to determine: (1) Whether the agreed facts are sufficient to show the commission of the offense charged in the complaint; (2) whether the statute on which the proceeding is based is constitutional. Such procedure is supported by precedent. *State* v. *Montgomery,* 92 Me., 433, 43 A., 13.

The complaint lays in particular the violation of the eleventh section of the statute chapter, which provides, in substance:

Any itinerant vendor who, not having first procured licenses to do so, exposes for sale, or sells, publicly or privately, any goods, wares or merchandise, without State and local licenses, is guilty of a misdemeanor, punishable by fine or imprisonment or both.

Section fourteen exacts the deposit of mention a short space back. Additionally, this section commands the payment of one hundred dollars, as a fee for a State license, good for one year.

Sections sixteen and seventeen relate to local licenses, fees therefor to equal taxation on property of like value.

Whether the respondent had made a deposit of the prescribed amount of money, the record does not state.

The salient facts are quickly related. The respondent lives in Boston, Massachusetts, where he has a store and salesrooms. He buys and sells lotions and salves, such as barbers apply to the skin, on shaving and trimming the beard, and cutting and dressing the hair, of their patrons. Beauticians, as it is said, use the same preparations and ointments in their occupation. Besides keeping his store, respondent goes from town to town in his home state, as a solicitant vendor of the commodities of his traffic, his equipment consisting of an automobile, from which he sells and

delivers to barbers and beauty shops the identical goods he carries with him. In doing this, he is, by statutory definition in Massachusetts, practicing the trade, or plying the vocation of a peddler. Mass. Gen. Laws, Chap. 101, Sec. 13.

Massachusetts statutes distinguish "transient vendors" from "hawkers and peddlers". The distinction is determined by the manner in which the selling of goods is conducted. Transient business means any exhibition and sale of goods in any tent, booth, building, or other structure not kept open a defined minimum period in each year. The transient merchant is thus contrasted with the permanent merchant. Hawkers and peddlers are persons carrying any goods, wares or merchandise about the country, either on foot or from any vehicle, seeking customers. Mass. Gen. Laws, supra.

The Maine statute, in the latest revision, (R. S., supra), groups as "itinerant vendors," those doing a temporary or transient business in a building or structure, or at retail from a car, wagon, or other conveyance, steamer or vessel. As originally passed into a law, the statute comprised only transient business in a building or structure. 1893 Laws, Chap. 259. Selling goods, wares or merchandise from a car, steamer or vessel was added in 1897, Chapter 210. The fact that, in 1919, (1919 Laws, supra), the Legislature interpolated after the word "car," "wagon, or other conveyance," as other types of vehicles, doubtless explains the somewhat awkward and inconsistent inclusion of peddlers in the inhibition of what at first was purely regulatory of itinerant vending.

However, the statute, in its ultimate phrase, correctly designates peddlers. "The leading primary idea of a . . . pedler," says Chief Justice Shaw, in *Com.* v. *Ober,* 12 Cush., 493, "is that of an itinerant or traveling trader, who carries goods about, in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business."

That the State may require a license, and the payment of a fee therefor, from peddlers selling goods which are within the State, and of the mass of property therein, although brought from another State, is settled law. 12 C. J., 105; *State* v. *Montgomery,* 94

Me., 192, 47 A., 165; *Howe Machine Co.* v. *Gage*, 100 U. S., 676, 25 Law ed., 754; *Emert v. Missouri*, 156 U. S., 296, 39 Law ed., 430; *Kehrer* v. *Stewart*, 197 U. S., 60, 49 Law ed., 663; *Banker Bros. Co.* v. *Pennsylvania*, 222 U. S., 210, 56 Law ed., 168; *Singer Sewing Machine Co.* v. *Brickell*, 233 U. S., 304, 58 Law ed., 974.

Defense here is, before anything else, that even though the respondent peddled in Maine, yet he transgressed no statute, but was indeed protected by reciprocal provision in the very statute, since Maine citizens might peddle in Massachusetts without being licensed.

The prescription of the Massachusetts statute is not, as we read it, comprehensive, in exemption, of peddling the species of merchandise which the respondent peddled in Maine.

It is next urged that as the packages or containers of the salves and lotions were of a size such as not ordinarily purchased by private individuals, any sale the respondent made from his "conveyance" was at wholesale, and not at retail.

"Wholesale" and "retail" are relative terms; neither finds definition in the Maine statute.

As a general rule, wholesalers deal only with persons who buy to sell again, while retailers deal with consumers. *State* v. *Scampini*, 77 Vt., 92, 59 A., 201. Selling by wholesale implies the selling of goods in unbroken pieces or parcels, as by the barrel, pipe, cask, etc., or in a number of such pieces or parcels. *Gorsuth* v. *Butterfield*, 2 Wis., 237, 243. The character, not of buying, but of selling, is determinative. *Great Atlantic, etc., Co.* v. *Cream of Wheat Co.*, 227 Fed., 46, 47. The primary and usual meaning of the word "wholesale" is the sale of goods in gross to retailers, who sell to consumers. 30 *Am. & Eng. Encyc. L.* (2nd ed.), 518; Re *Metz Bros. Brewing Co.*, (Nebr.) 129 N. W., 443, 32 L. R. A. (N. S.), 622; *State* v. *Spence*, (La.) 53 So., 596. The Massachusetts court apparently turns decision on the point of dealing with goods in large quantities, by the package or piece. *Com.* v. *Greenwood*, 205 Mass., 124, 91 N. E., 141. Florida holds the wholesale dealer one who sells in large quantities in difference from one who sells in small lots at retail. *Florida Packing etc., Co.* v. *Carney*, 41 So., 190, citing *Goodwin* v. *Clark*, 65 Me., 280.

There would be no useful purpose to be served by pursuing judicial definitions further. Each necessarily has reference to a just use of language concerning the circumstances of the case before the court.

It is easy to conceive of a purchaser who is neither a "dealer" nor a "consumer". For instance, a barber is, in general acceptation, not engaged in a mercantile pursuit. *Cleve* v. *Mazzoni*, (Ky.) 45 S. W., 88. A barber labors manually; he is a mechanic. *Terry* v. *McDaniel*, (Tenn.) 53 S. W., 732, 733, 46 L. R. A., 559. Barbers buy economic goods for use in their business. They may, at odd times, make package sales, but they buy, as a usual thing, not to sell again, but to utilize. Selling, with them, is incidental, as an accommodation. We take judicial notice of that.

As previously noted, the respondent sold wares to barbers and beauticians, in quantities larger than ordinarily purchased by individual users. That he sold in the same package, or by the gross, or dozen, or otherwise, as he himself had bought, is not shown. On the contrary, inference is warranted, fairly, that respondent went in quest of buyers to whom he vended on their peculiar emergencies. The need of one might have been small, that of another relatively larger. But, all said and done, he was going from shop to shop, carrying for sale, and exposing to sale, and selling and delivering, the goods, wares and merchandise he carried. He was a sort of traveling jobber or middleman, selling, from opened packages, still smaller ones, adapted to temporary wants of his customers.

Such sales cannot be found to be at wholesale, within the meaning of the statute.

If, occasionally, in some particular transaction, the term "wholesale" loses somewhat of its primal significance, it manifestly does not in the present case.

To come now to still another question. The statute is assailed as violative of constitutional limitations and restraints, in abridging fundamental personal rights and privileges.

The State may, undoubtedly, impose taxes in the form of licenses, upon different occupations within its limits, but such power must be validly exercised. *State* v. *Bornstein*, 107 Me., 260, 78 A., 281.

Under our dual systems of government, federal and state, each in its own sphere, there are two citizens, and two loyalties. The United States is composed of the States; the States are constituted of the citizens of the United States, who also are citizens of the States.

The Constitution of the State of Maine, in Article 1, Section 1, affirmatively guarantees to all persons an equality of right to pursue any lawful occupation under equal legal regulation· and protection. That resident and nonresident, citizen and alien, stand, respecting unreasonable discrimination, on a parity of footing, a decision of our own court declares. *State* v. *Montgomery*, supra, 94 Me., 192, 147 A., 165.

The Constitution of the United States is the supreme organic law. A State statute repugnant to the Federal Constitution is void.

Article 4, Section 2, of the Federal Constitution, provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States". That is, a citizen of one State doing business in another State cannot be denied the privileges and immunities enjoyed by its citizens. The State cannot legislate against him, except constitutionally. The intent was that the citizen of one State should not be an alien in another. No State may deprive the citizen of any other State of any privilege or immunity generally possessed by its own citizens.

The Fourteenth Amendment to the Constitution was proposed by Congress June 16, 1866; it was proclaimed adopted July 21, 1868. This amendment has been styled "the great anchorage for the rights which essentially belong to a citizenship in a free government". A provision is: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States".

This was held to signify, as the language imports, the privileges and immunities of national citizenship, and not to include those belonging to the citizen of the State. The "privileges and immunities" protected are only those that belong to citizens of the United States, as distinguished from citizens of the State—those that arise from the constitution and laws of the United States and not those that spring from other sources. *Slaughter-House Cases*, 16 Wall., 36, 21 Law ed., 394; McPherson v. Blacker, 146 U. S., 1,

36 Law ed., 869; *Duncan* v. *Missouri*, 152 U. S., 377, 38 Law ed., 485; *Twining* v. *New Jersey*, 211 U. S., 78, 53 Law ed., 97; *Maxwell* v. *Bugbee*, 250 U. S., 525, 63 Law ed., 1124; *Prudential Ins. Co.* v. *Cheek*, 259 U. S., 530, 66 Law ed., 1044; *Hamilton* v. *University of California*, 293 U. S., —, 79 Law ed., —. (Adv. p. 159). The opinion upon the matters actually involved and maintained by the judgment in the *Slaughter-House Cases*, supra, has never been doubted or overruled. *Maxwell* v. *Dow*, 176 U. S., 581, 44 Law ed., 597.

Putting the first clause of Section 2 of Article 4, and the quoted clause from the Fourteenth Amendment, together, the State is forbidden to abridge the privileges and immunities of (1) citizens of all other States, and (2) citizens of the United States. No governmental department of the State has the right to ignore any rights which the Federal Constitution thus assures citizens.

The Fourteenth Amendment also prohibits a State denying "to any person within its jurisdiction the equal protection of the laws". The words seem so plain as to exclude the need of refinements in interpretation. Though prohibitory, they contain a necessary implication of a positive right—the right to an equality before every law, the right of the citizen to be free in any State, from unjust discrimination between him and other persons, as to legal rights or duties. Such is the plain meaning of the amendment. *Strauder* v. *West Virginia*, 100 U. S., 303, 25 Law ed., 664.

This phraseology does not prevent reasonable classification so long as all within a class are treated alike. *State* v. *Bohemier*, 96 Me., 257, 52 A., 643. It does prohibit arbitrary discrimination between persons, or fixed classes of persons, such as that based on State citizenship. *Pearson* v. *City of Portland*, 69 Me., 278. See, too, as announcing the same principle, *State* v. *Furbush*, 72 Me., 493.

A statute which forbade peddling except under a license, and which provided that citizens might be thus licensed, and that aliens should not be, was held an unconstitutional discrimination. *State* v. *Montgomery*, supra, (94 Me., 192, 47 A., 165).

In 1901, the Maine Legislature enacted: "An Act relating to Hawkers and Peddlers," 1901 Laws, Chap. 277. The act provided for licenses and fees, and contained this clause: "but any resident

of a town having a place of business therein, owning and paying taxes to the amount of twenty-five dollars on his stock in trade, can peddle said goods in his own town without paying any license fee whatever."

That statute was held to offend the provision of the Fourteenth Amendment, in denying the equal protection of the laws, and to clash with the equal rights to acquire property and pursue happiness guaranteed by the State Constitution, since the differentiation of persons who were, from those who were not, to pay license fees, was not a discrimination based upon the inherent differences in the nature of the business carried on, or the kind of property dealt in. *State* v. *Mitchell,* 97 Me., 66, 53 A., 887.

A statute of Maryland which required all traders residing within the State to procure licenses at certain rates, and subjecting to indictment and penalty persons not residents of the State, who, without having been licensed at a higher rate, should sell, or offer for sale, by card, sample, or trade list, in the City of Baltimore, any goods, wares or merchandise whatever, save agricultural products and articles manufactured in the State, was held to be unconstitutional because it imposed a discriminatory tax upon the residents of other States. *Ward* v. *Maryland,* 79 U. S., 418, 20 Law ed., 449.

In *Webber* v. *Virginia,* 103 U. S., 344, 26 Law ed., 565, the statute called in question was held unconstitutional for the reason that it made "a clear discrimination in favor of home manufacturers, and against the manufacturers of other States."

A statute imposing a license fee on peddlers of commodities shipped from or produced at a place outside the jurisdiction imposing the fee and requiring no license for the peddling of like goods originating within that jurisdiction, is discriminating and invalid. *Welton* v. *Missouri,* 91 U. S., 275, 23 Law ed., 347. Such is the hinge of decision in our own case of *State* v. *Bornstein,* supra.

"The right of the state to impose a license tax upon peddlers, where it operates uniformly upon all citizens, and does not discriminate in favor of citizens of Virginia as against citizens of other states, or where the tax imposed is in the exercise of the police powers, . . . has been uniformly maintained; but where any injurious discrimination is discovered in favor of the resident as

against the nonresident, . . . the state laws are declared to be void, as repugnant to the Constitution of the United States." *Com.* v. *Myer*, (Va.) 23 S. E., 915, 31 L. R. A., 379.

So much for statutes which have been declared void for transgression of constitutional assurances and guarantees. The decided cases clearly determine that fundamental rights of citizenship are not mere abstractions.

It seems desirable to remark that there are exceptions to the general rule that a statute discriminatory against nonresidents is unconstitutional and void. Licenses to sell intoxicating liquors are justified under the police power for the protection of the public morals. *Crowley* v. *Christensen*, 137 U. S., 86, 34 Law ed., 620. Hunting and fishing licenses, on the ground that game, fish, and fur-bearing animals, not reduced to possession, are the common property of the citizens of the State. *Lacoste* v. *Department of Conservation*, 263 U. S., 545, 68 Law ed., 437. The manifest purpose of reciprocity provision in the inheritance tax statute respecting the transfer of intangible personal property owned by a nonresident is to avoid the hardship of double taxation on the same inheritance by different States. The devolution of property from the dead to the living is the creature of the law. *State* v. *Hamlin*, 86 Me., 495, 30 A., 76. Ownership of the highway permits, in most cases, control and regulation of road facilities.

None of these exceptions are, however, of relevancy here.

It evidently was the intent of the Legislature that, in any event, residents of Maine should not pay license fees; nor should residents of any other States "whose laws impose no burden" on Maine residents peddling there. The statute is specific as to Maine residents; it is general and restricted as to residents of other States.

The respondent is a citizen of Massachusetts. The statutes of his State require that peddlers, wheresoever resident, there peddling commodities or wares, such as those respondent peddled in Maine, shall pay fees and obtain licenses. He is a person within the jurisdiction of the State of Maine, where, in constitutional right, he may pursue a business occupation, and acquire and enjoy property, on legal equality with Maine citizens. The statute under examination affects his rights. He, therefore, having an

interest in defeating the statute, may contest the constitutionality thereof. *Cooley, Const. Lim.* (7th ed.), 232; *State* v. *Scampini*, supra; *Clark* v. *Kansas City*, 176 U. S., 114, 44 Law ed., 392.

Sufficient authorities have been cited to show that the statute under consideration is not a valid exercise of police power, but a positive discrimination in favor of Maine residents, intended also to apply, in reciprocal indulgence, to residents of other States. The statute does not rest on actual differences. It does not define a new class on sound reasons for reclassification, but makes a distinction between members of a class. It is incompatible with the occupation under equal regulation clause of the Constitution of the State of Maine. *State* v. *Mitchell*, supra. It is at variance with the privileges and immunities clause of the Constitution of the United States. *State* v. *Montgomery*, supra, (94 Me., 192, 47 A., 165). It is opposed to the equal protection clause. *State* v. *Mitchell*, supra.

Nullity pervades the entire enactment, exception being integral of, and affecting the whole. To hold that only the provision as to exemption is void, and the rest of the statute valid, so that, notwithstanding unmistakable legislative expression otherwise, peddlers must secure licenses and pay fees, would be to stipulate the doing of that which the Legislature has said should not be done. To say this is not so much to say it out of the thought of this writer, as out of that which has made that thought possible. *State* v. *Mitchell*, supra.

In accordance with the stipulation of the report, mandate will direct the entry of *nolle prosequi*.

*So ordered.*