Roger TONDREAU, et al.

v.

The SHERWIN–WILLIAMS COMPANY.

Supreme Judicial Court of Maine.

Argued Jan. 18, 1994.

Decided March 11, 1994.

---

George Z. Singal (orally), Hans G. Huessy, Gross, Minsky, Mogul & Singla, P.A., Bangor, for plaintiffs.

Elizabeth A. Oliver (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

The Sherwin–Williams Company appeals from a summary judgment entered in the Superior Court (Cumberland County,

*McKinley, A.R.J.*) in favor of Roger Tondreau, Bertha Morin, Germaine Caron, Bernadette Tondreau and G & F, Inc.,[1] on their complaint against Sherwin–Williams for its alleged breach of contract. Sherwin–Williams contends that it was error for the trial court to grant a summary judgment in favor of the plaintiffs and that it was entitled to a summary judgment in its favor as a matter of law. We hold that the contract is ambiguous and that there remains a genuine issue of material fact in dispute. Accordingly, we vacate the judgment.

In May of 1966, Sherwin–Williams entered into a written lease with Germaine Caron, Roger Tondreau, Bernadette Tondreau, Bertha Morin, and Lillian Racine. The lease provided that Sherwin–Williams would occupy certain retail premises owned by the lessors, located on Maine Street in Brunswick, and would pay a monthly rent of $275, "plus 6% of net retail sales made from demised premises in excess of $25,000 annually." The lease further provided:

> The parties agree that computation of such additional rent shall be made and adjustments payable within 60 days following the end of the lease year. Net retail sales as used herein shall not include wholesale, sales to dealers or transfers of merchandise to or from this branch for or on behalf of the Tenant or it's [sic] affiliates.

As the result of several lease extensions, these terms remained in effect through July of 1991. In November of 1988, the original lessors sold the property and assigned the lease to G & F, Inc.

In February of 1991, the plaintiffs instituted the present action against Sherwin–Williams, alleging that it had been breaching the lease since first occupying the premises by excluding from the calculation of net retail sales the amount representing sales to builders and contractors.[2] The plaintiffs concede that relief on claims accruing before Febru-

---

1. Two of the plaintiffs named in the complaint, Germaine Caron and Bernadette Tondreau, are deceased. Although there has been no amendment to the complaint, the personal representatives of both deceased plaintiffs have been participating in this litigation on behalf of the estates.

2. The complaint contained a second count seeking the "fair market value of the benefit received" by Sherwin–Williams. The trial court granted no relief on this count and the plaintiffs have not challenged this determination on appeal.

ary of 1985 is barred by the six-year statute of limitations, 14 M.R.S.A. § 752 (1980). The parties agreed to bifurcate the litigation to allow the trial court first to determine liability and then to determine damages, if any. Both the plaintiffs and the defendant moved for a summary judgment. After a hearing, the court (*Cole, J.*) found in favor of the plaintiffs on the issue of liability. In accordance with a subsequent stipulation of the parties as to the amount of damages, the court entered a summary judgment for the plaintiffs in the amount of $254,025.35 and Sherwin–Williams appeals from that judgment.

■ On an appeal of a summary judgment, we consider the evidence in the light most favorable to the nonprevailing party and review the trial court's decision for errors of law. *Chasse v. Mazerolle,* 622 A.2d 1180, 1182 (Me.1993). A summary judgment is proper if there is no genuine issue of material fact and any party is entitled to a judgment as a matter of law. *Connecticut Nat. Bank v. Kendall,* 617 A.2d 544, 548 (Me.1992); M.R.Civ.P. 56(c). A court may properly enter a summary judgment in a case when the parties are not in dispute over the facts, but differ only as to the legal conclusions to be drawn from those facts. *Chadwick–BaRoss, Inc. v. T. Buck Constr., Inc.,* 627 A.2d 532, 534 (Me.1993). However, "[e]ven when there are cross-motions for summary judgment, the making of such inherently contradictory claims does not constitute an agreement that if one is rejected, the other is necessarily justified." *Winter v. Casco Bank and Trust Co.,* 396 A.2d 1020, 1023 (Me.1979).

■ The threshold question in the present case is whether the contract of the parties is ambiguous. This is a question of law, and one that we review *de novo.* *Maine State Employees Assn. v. Department of Corrections,* 593 A.2d 650, 653 (Me.1991). When contract language is ambiguous or uncertain, its interpretation is a question of fact to be determined by the factfinder. *F.O. Bailey Co. v. Ledgewood, Inc.,* 603 A.2d 466, 468 (Me.1992). We agree with the trial court in its conclusion that the contract is ambiguous because it is "abundantly clear" that the

terms "wholesale" and "retail" as used in the lease are "reasonably susceptible of different interpretations." *See Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1189 (Me.1985) (contract of insurance).

■ When there is an ambiguity in a written contract, and the record does not completely eliminate the possibility of an issue of material fact concerning the intent of the parties, summary judgment is inappropriate. *Baybutt Constr. Corp. v. Commercial Union Ins.,* 455 A.2d 914, 922 (Me.1983). The test is whether the moving party presented the court with "undisputed facts which would necessarily be determinative" of the meaning of the contract. *Id.* at 925; *see also Bourisk v. Amalfitano,* 379 A.2d 149, 151 (Me.1977) (summary judgment precluded in contract case where affidavits suggested contrasting intentions of the parties).

The trial court found determinative of the parties' intent in this case the holding in *State v. Cohen,* 133 Me. 293, 177 A. 403 (1935). *Cohen,* presented to the court on an agreed statement of facts, involved a misdemeanor prosecution in connection with an alleged failure to obtain a license as required by a statute that imposed a license fee on itinerant vendors. *Id.* at 294, 177 A. 403. The statute defined "itinerant vendors" as those doing a temporary or transient business in a building or structure, or at retail from a car, wagon, or other conveyance, steamer, or vessel. *Id.* at 296, 177 A. 403. In discussing the meaning of "wholesale" and "retail," we noted the definitions attached to those terms by other courts and stated, "There would be no useful purpose to be served by pursuing judicial definitions further. *Each necessarily has reference to a just use of language concerning the circumstances of the case before the court.*" *Id.* at 298, 177 A. 403 (emphasis added).

Here, the trial court pointed to 17A Am. Jur.2d, *Contracts* § 362 (1991) to support its conclusion that "the lack of evidence as to either party's discussion of the term 'retail' requires this court to rely heavily upon [*Cohen* and other cases where the terms appear in a tax context] to discern the previously adjudicated meaning of the terms wholesale and retail." In relevant part, section 362 provides:

Where words or terms having a definite legal meaning and effect are knowingly used in a written contract or other instrument, the parties thereto will be presumed to have intended such words or terms to have their proper legal meaning and effect, in the absence of any contrary intention appearing in the instrument. This rule applies, for instance, where words or terms have been adjudicated to have a certain meaning. Accordingly, where it has been decided that certain language in a contract indicates a certain intention, such intention must be inferred from the use of such language in other similar contracts. Where, however, it appears by the evidence that such words and phrases as "agreement promised," "promised and agreed," "promise and agreement," "understood and agreed," "in consideration of marriage," and "marriage settlement and gift" were not used by the parties in their technical, legal sense, such meaning will not be given them in the interpretation of a contract.

*Id.* (footnotes omitted). While there may be circumstances in which certain words used in contracts will always have a definite legal meaning and effect in the absence of clear contractual language to the contrary, *see, e.g., Heist v. Dunlap & Co.,* 193 Ga. 462, 18 S.E.2d 837, 839 (1942) (concerning words commonly used in mortgage documents to describe mortgagee's power of sale), neither *Cohen* nor any of the cases relied on by the trial court or cited by the parties support the conclusion that "wholesale" and "retail" have such a definite legal meaning and effect. The plaintiffs did not present the court with undisputed facts that would necessarily be determinative of the meaning of the contract. Accordingly, it was error to determine as a matter of law that there is no genuine issue of material fact as to the intent of the parties and that the plaintiffs are entitled to a summary judgment.

The entry is:

Judgment vacated; remanded for further proceedings consistent with the opinion herein.

ROBERTS, RUDMAN and DANA, JJ., concurring.

CLIFFORD, Justice, with whom COLLINS, Justice, joins concurring in part and dissenting in part.

I concur with the court's conclusion that the Superior Court erred in entering a summary judgment in favor of the plaintiffs. I also agree that the lease language is ambiguous, and that relevant extrinsic evidence is admissible to aid the trial court in construing the contract. Further, the trial court's construction of the lease is entitled to a deferential review. *See Titcomb v. Saco Mobile Home Sales, Inc.,* 544 A.2d 754, 757 (Me. 1988); *Pelletier v. Jordan Assoc.,* 523 A.2d 1385, 1386 (Me.1987). In this case, however, the parties agree that all the extrinsic evidence that is available has been submitted to the Superior Court. In my view that evidence cannot rationally support a finding of any breach of contract by Sherwin–Williams, and entitles Sherwin–Williams to a summary judgment. Therefore, I respectfully dissent from the court's decision to remand to the Superior Court for trial.

When construing the intent of the parties to interpret an ambiguous contract term, a court gives considerable weight to the conduct of the parties. *See Blue Rock Indus. v. Raymond Int'l, Inc.,* 325 A.2d 66, 73 (Me. 1974) (court places great reliance on conduct of parties in construing ambiguous contractual term); *Restatement (Second) of Contracts* § 202(4) (1981); 17A Am.Jur.2d *Contracts* § 357 (1991). In this case, the evidence shows that it was the custom of Sherwin–Williams, in all of their stores, for a period of approximately thirty years, to define retail sales as sales to household, or personal use customers, and wholesale sales as sales to business or nonresidential customers. Moreover, it is undisputed that plaintiffs accepted payments under the lease for twenty-one years, and agreed to several extensions of the lease without objecting to or attempting to renegotiate it, or objecting to the practice of Sherwin–Williams' method of allocating retail and wholesale sales.

Thus, the only evidence in the record to aid the factfinder in construing this ambigu-

ous lease supports the construction advanced by Sherwin–Williams. Plaintiffs have produced no evidence in support of the construction of the lease they contend must be adopted. Because they have the burden to prove their allegations that Sherwin–Williams breached the lease, and because Sherwin–Williams would be entitled to a judgment as a matter of law at trial if the plaintiffs presented nothing more than was before the court at the time of the entry of the summary judgment, Sherwin–Williams is entitled to a summary judgment. *H.E.P. Dev. Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me.1992); *see* M.R.Civ.P. 50(c).

I would vacate and remand to the Superior Court for entry of judgment for Sherwin–Williams.