STATE OF MAINE
Cumberland. ss. Clerk's Office

JUN 0 2 2016

RECEIVED

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-15-440

DSCI, LLC,

        Plaintiff

v.

TODD WOLF,

        Defendant

ORDER ON DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

Before the court is defendant Todd Wolf's motion for partial summary judgment on count II of his counterclaim against plaintiff DSCI, LLC, in which defendant asks the court to declare that the non-compete agreement does not prohibit defendant from participating in and/or bidding in response to requests for information (RFIs) and requests for proposals (RFPs). For the following reasons, the motion is denied.

FACTS

Plaintiff is in the business of providing telephone, internet, and computer services. (Pl.'s Addt'l S.M.F. ¶ 1.) In October 2014, plaintiff purchased the assets of Unified Technologies, Inc. (Unified) for more than $1 million. (Id. ¶ 2.) These assets included all of Unified's contracts, as well as its good will. (Id. ¶¶ 3, 5.) The purchase and sale agreement identified approximately 200 customers who had contracts with Unified at the time of the sale. (Id. ¶ 4.) Of these customers, 46 were non-profit, educational, governmental entities, or quasi-governmental entities. (Id. ¶ 9.)

At the time of the sale, defendant was a shareholder and employee of Unified, as well as its president. (Id. ¶ 6.) Defendant received approximately $500,000.00 from the sale. (Id. ¶ 7.) On October 1, 2014, the parties executed a non-competition and non-

1

DISCUSSION

### 1. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . show that there is no genuine issue as to any material fact." M.R. Civ. P. 56(c). "A material fact is one having the potential to affect the outcome of the suit." MP Assocs. v. Liberty, 2001 ME 22, ¶ 12, 771 A.2d 1040. "A genuine issue exists when sufficient evidence supports a factual contest to require a factfinder to choose between competing versions of the truth at trial." Burdzel v. Sobus, 2000 ME 84, ¶ 6, 750 A.2d 573. In contract disputes, the "test is whether the moving party presented the court with undisputed facts which would necessarily be determinative of the meaning of the contract." Tondreau v. Sherwin-Williams Co., 638 A.2d 728, 730 (Me. 1994) (citation omitted).

### 2. Motion for Partial Summary Judgment

#### a. Interference and Solicitation

Defendant argues that, if the RFIs and RFPs are initiated by the entities, and not by defendant, defendant's response to these requests cannot be viewed as intentional interference or solicitation under the agreement. (Def.'s Mot. Summ. J. 2-4.) Plaintiff counters that defendant's response to RFIs and RFPs from plaintiff's customers would interfere with plaintiff's business relationships by soliciting its customers to instead form a relationship with defendant's company. (Pl.'s Opp'n Mot. Summ. J. 2-4.)

Section 3(A) of the agreement provides in part that defendant shall not, until October 2016, "intentionally interfere in any material respect with the business relationships (whether formed prior to or after the date of this Agreement) between [plaintiff] and its Affiliates and customers or suppliers of [plaintiff] and its Affiliates."

3

solicitation agreement (agreement), as well as an agent agreement. (Supp. S.M.F. ¶¶ 4-5.) Defendant was represented by counsel during the negotiation of these agreements. (Pl.'s Addt'l S.M.F. ¶ 15.) On September 8, 2015, plaintiff terminated the agent agreement, effective October 8, 2015. (Supp. S.M.F. ¶ 6.)

On September 29, 2015, plaintiff filed a verified complaint, in which plaintiff alleges one count of breach of contract. Specifically, plaintiff alleges that defendant breached the agreement by causing several of plaintiff's customers to cancel their contracts with plaintiff and enter into a business relationship with defendant's company, Wolf Technology Group. In addition to the verified complaint, plaintiff filed a motion for a temporary restraining order. Defendant opposed the motion on October 16, 2015. On December 7, 2015, the court denied the motion, finding that plaintiff had not demonstrated either irreparable injury or a likelihood of success on the merits.

Defendant filed an answer and counterclaim on January 28, 2016. In the counterclaim, defendant alleges two causes of action: count I, breach of contract; and count II, declaratory judgment. In count II, defendant seeks a declaratory judgment that the agreement does not prohibit defendant from participating in and/or bidding in response to RFIs and RFPs from non-profit, educational, governmental, and quasi-governmental entities. See 5 M.R.S. §§ 1825-B, 1825-D (2015).

On February 22, 2016, defendant filed a motion for partial summary judgment on count II of his counterclaim. Plaintiff opposed the motion on March 14, 2016. Plaintiff filed an opposing statement of material facts that admitted all of defendant's facts and asserted 15 additional facts. Defendant filed a reply on April 4, 2016.[1]

---

[1] Defendant did not file a reply statement of material facts as required by M.R. Civ. P. 56(h)(3). Accordingly, plaintiff's additional facts, which are supported by record references, are admitted. M.R. Civ. P. 56(h)(4). Further, the court does not consider defendant's affidavit, filed with his reply memorandum but with no response to plaintiff's additional facts. Id.

2

(Supp. S.M.F. ¶ 4; Ex. A 2.) Similarly, section 3(C) provides that defendant shall not "solicit or entice, or attempt to solicit or entice, any clients or customers of [plaintiff] or its Affiliates or potential clients or customers of [plaintiff] and its Affiliates, for purposes of diverting their business or services from [plaintiff] and its Affiliates." (Ex. A 3.) Under section 3(G), however, defendant may sell, service, install, and maintain premise-based systems. (Id. at 4.)

The record is unclear as to whether the RFIs and RFPs at issue in count II of defendant's counterclaim involve premise-based systems. If so, defendant's ability to respond to these RFIs and RFPs presents the same conflict that the court addressed in its order on plaintiff's motion for a temporary restraining order. (See 12/7/15 order 3.) Under one interpretation, sections 3(A) and 3(C) serve as an absolute prohibition on interfering with or soliciting plaintiff's business relationships. This interpretation is supported by the fact that the provision in section 3(A) regarding interference is not followed by the phrase "except to the extent modified by Section 3G," which appears elsewhere in section 3(A). Similarly, although section 3(C) does refer to section 3(G), that reference does not contain any language that would suggest that section 3(G) modifies section 3(C). Under this interpretation, defendant could not respond to any RFIs and RFPs from plaintiff's customers, even those involving premise-based systems, if such a response constituted intentional interference or solicitation.

Another interpretation, however, is that section 3(G) creates an exception to sections 3(A) and 3(C) under which defendant may interfere with and solicit plaintiff's business relationships through defendant's sale, service, installation, and maintenance of premise-based systems. This interpretation is supported by the fact that section 3(G) does not contain any language limiting defendant's activities with regard to premise-

4

based systems. Under this interpretation, the agreement would not prohibit defendant from responding to RFIs and RFPs regarding premise-based systems.

In contrast, if the RFIs and RFPs at issue in count II do not involve premise-based systems, defendant's ability to respond to them depends only on whether his response would constitute intentional interference or solicitation under sections 3(A) or 3(C). The agreement does not define these terms. Black's Law Dictionary defines "interference" as "[t]he act of meddling in another's affairs" and "intentional" as "[d]one with the aim of carrying out the act." Black's Law Dictionary 883, 888 (9th ed. 2009). It further defines "solicitation" as "[t]he act or an instance of requesting or seeking to obtain something" and "entice" as "[t]o lure or induce; esp., to wrongfully solicit (a person) to do something." Id. at 611, 1520.

The parties have presented differing yet reasonable interpretations of these terms in the context of the present dispute. On one hand, the fact that the entities initiate the RFIs and RFPs could show that defendant's response to these requests is not aimed at meddling in plaintiff's business relationships or luring plaintiff's customers to defendant's company. (See Def.'s Mot. Summ. J. 2-4.) On the other hand, defendant's response to requests from plaintiff's customers could certainly show that he is requesting or seeking to obtain their business. (See Pl.'s Opp'n Mot. Summ. J. 2-4.)

These conflicting interpretations underline ambiguities in the agreement. See Portland Valve, Inc. v. Rockwood Sys. Corp., 460 A.2d 1383, 1387 (Me. 1983) ("Contract language is ambiguous when it is reasonably susceptible of different interpretations."). The existence of these ambiguities precludes entry of summary judgment. See, e.g., Devine v. Roche Biomedical Labs., 637 A.2d 441, 445 (Me. 1994) ("The proper interpretation of the ambiguous language is to be determined by the trier of fact on the basis of evidence presented to it at the time of trial."); Tondreau, 638 A.2d at 730

5

("When there is an ambiguity in a written contract, and the record does not completely eliminate the possibility of an issue of material fact concerning the intent of the parties, summary judgment is inappropriate."); Town of Lisbon v. Thayer Corp., 675 A.2d 514, 517 (Me. 1996) ("Because the agreement is ambiguous, its meaning should not have been determined at the summary judgment stage.").

Defendant's argument that the court should construe the agreement strictly against plaintiff is equally unpersuasive. (Def.'s Mot. Summ. J. 4.) Non-competition agreements between an employer and its employee are "contrary to public policy and will be enforced only to the extent that they are reasonable and sweep no wider than necessary to protect the business interests in issue." Chapman & Drake v. Harrington, 545 A.2d 645, 646-47 (Me. 1988) (citation omitted); Saga Commc'ns of New England, Inc. v. Crocker, 1995 Me. Super. LEXIS 403, at *1-3 (Nov. 9, 1995). The agreement in this case was not between an employer and employee. Because the agreement was instead made as part of the purchase of a business, its interpretation is not subject to the rule that ambiguities are construed against the employer. Cianbro Cos. v. Uremovich, No. 00330-DBH, 2013 U.S. Dist. LEXIS 29754, at *17 (D. Me. Jan. 28, 2013).

b. Agent Agreement

Defendant further argues that the agreement does not prohibit him from responding to RFIs and RFPs because plaintiff's termination of the agent agreement rendered "the non-competition" void. (Def.'s Mot. Summ. J. 1-2; Def.'s Reply 1-2.) Section 3(G) provides: "If such agency agreement or arrangement is terminated or withdrawn by [plaintiff] before the end of term of the non-competition as to [defendant], then the non-competition shall be void and of no further force and effect as to [defendant]." (Ex. A 4.) Plaintiff terminated the agent agreement on September 8, 2015. (Supp. S.M.F. ¶ 6.) The meaning of "the non-competition" is unclear. (See

6

12/7/15 order 4.) For example, it could refer to the prohibition on interference under section 3(A), the prohibition on solicitation under section 3(C), or a prohibition on a type of competition unique to section 3(G). This ambiguity prevents the court from entering summary judgment on this ground. See Tondreau, 638 A.2d at 730.

CONCLUSION

The relationship among sections 3(A), 3(C), and 3(G) is ambiguous, as is the meaning of "intentional interference" and "solicitation." Further, the effect of plaintiff's termination of the agent agreement is unclear. Accordingly, this case is not appropriate for a partial summary judgment on count II of the counterclaim.

The issues for trial with regard to count II of defendant's counterclaim are

(1) if the RFIs and RFPs at issue in count II involve premise-based systems, whether section 3(G) creates an exception to the prohibitions on intentional interference and solicitation under sections 3(A) and 3(C);

(2) if the RFIs and RFPs at issue in count II do not involve premise-based systems or if section 3(G) does not create an exception, whether defendant's act of responding to RFIs and RFPs from plaintiff's customers constitutes intentional interference in violation of section 3(A) or solicitation in violation of section 3(C); and

(3) whether plaintiff's termination of the agent agreement voided defendant's obligations under sections 3(A), 3(C), or 3(G).

The entry is

> Defendant's Motion for Partial Summary Judgment on Count II of the Counterclaim is DENIED.

Dated: June 1, 2016

Nancy Mills
Justice, Superior Court

7

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  Docket No. CV-15-440



DSCI, LLC,

                Plaintiff                         ORDER ON MOTION
                                                  FOR TEMPORARY
v.                                                RESTRAINING ORDER

TODD WOLF,

                Defendant


Before the court is plaintiff's motion for a temporary restraining order with notice. In the verified complaint filed on 9/29/15, plaintiff seeks damages and injunctive relief. Plaintiff alleges that defendant violated a non-competition and non-solicitation agreement between the parties by causing several of plaintiff's customers to cancel their contracts with plaintiff and enter into a business relationship with defendant's company. Defendant opposed the motion on 10/16/15.

DISCUSSION

A. Standard of Review

A party seeking a temporary restraining order has the burden of demonstrating that: "(1) it will suffer irreparable injury if the injunction is not granted; (2) such injury outweighs any harm which granting the injunctive relief would inflict on the other party; (3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial possibility); and (4) the public interest will not be adversely affected by granting the injunction." Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res., 2003 ME 140, ¶ 9, 837 A.2d 129. Injunctive relief must be denied when the party fails to demonstrate any one of these criteria. Id. ¶ 10.

7 DEC '15 AM 10:01

## 1. Irreparable Injury

Plaintiff has not demonstrated irreparable injury with respect to its alleged loss of future revenue. An irreparable injury is one for which there is no adequate remedy at law. Bar Harbor Banking & Trust Co. v. Alexander, 411 A.2d 74, 79 (Me. 1980). Plaintiff alleges that it has lost approximately $300,000 in anticipated future revenue. (Compl. ¶ 21.) The fact that plaintiff is able to calculate approximate damages indicates that this alleged harm is not without an adequate remedy at law. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop, 839 F. Supp. 68, 74 (D. Me. 1993) (holding that availability of money damages cuts heavily against a finding of irreparable harm).

Plaintiff also has not demonstrated irreparable injury with respect to its alleged loss of good will. See Everett J. Prescott, Inc. v. Ross, 383 F. Supp. 2d 180, 191-92 (D. Me. 2005). Speculative claims of loss of good will do not constitute irreparable injury. Bishop, 839 F. Supp. at 75. The record reveals only that defendant allegedly interfered with plaintiff's relationships with four companies. (Compl. ¶¶ 15-20.) In his affidavit, defendant states that he did not sell a phone system to one of these companies, (Wolf Aff. ¶ 19), and he has produced affidavits from the three other companies that provide that defendant did not solicit their business. (Skolnekovich Aff. ¶ 7; Janvrin Aff. ¶ 6; Wilson Aff. ¶ 6.) Plaintiff, in the 9/10/15 letter to defendant, addresses only damages, not loss of good will. (Pl.'s Ex. B.) Any allegation of loss of good will is speculative on this record.

## 2. Likelihood of Success

Plaintiff also has not demonstrated a likelihood of success on the merits. To prevail on a breach of contract claim, plaintiff must establish breach of a material contract term, causation, and damages. Me. Energy Recovery Co. v. United Steel Structures, Inc., 1999 ME 31, ¶ 7, 724 A.2d 1248. Plaintiff argues that: (1) defendant

2

breached the agreement by interfering with plaintiff's business relationships, and (2) defendant's obligation not to interfere with plaintiff's business relationships is not affected by any termination of the parties' agency agreement.

### a. Interference

Section 3(A) of the agreement prohibits defendant from interfering with plaintiff's business relationships. (Pl.'s Ex. A 2.) Section 3(G) allows defendant to sell, service, install, and maintain premise-based systems. (Pl.'s Ex. A 4.) Plaintiff alleges that defendant sold premise-based systems to plaintiff's customers in violation of section 3(A). (Compl. ¶¶ 15-20.) Plaintiff argues that allowing defendant to sell premise-based systems under section 3(G) did not dispense with his obligation under section 3(A). (Pl.'s Reply 1-2.) The relationship between section 3(G) and section 3(A) is unclear. Section 3(A) establishes a general prohibition on defendant's interference with plaintiff's business relationships. (See Pl.'s Ex. A 2 (prohibiting defendant from interfering in any material respect with plaintiff's current and future business relationships).) But the plain language of section 3(G) does not impose any limits on defendant's ability to sell premise-based systems. If plaintiff was concerned that defendant's sale of premise-based systems could interfere with its business relationships, the parties could have specified restrictions in the agreement. Because they did not, it is unclear whether defendant violated the agreement. As a result, plaintiff has not demonstrated a likelihood of success on the merits.

### b. Agency agreement

Section 3(G) requires the parties to enter an agency agreement and provides that termination of the agency agreement renders "the non-competition" void as to defendant. (Pl.'s Ex. A 4.) Plaintiff revoked the agency agreement by letter dated 9/8/15. (Def.'s Ex. D to Wolf Aff.) Defendant argues that plaintiff's revocation of the

3

agency agreement terminated the entire agreement. (Def.'s Opp'n 8.) Plaintiff counters that the revocation terminated only defendant's obligation not to compete, and not his obligation not to interfere with plaintiff's business relationships. (Pl.'s Reply 2 n.1.) If the parties intended the term "non-competition" to refer to the entire agreement, they likely would have used the term "Agreement," as they did elsewhere. It is unlikely that the revocation of the agency agreement rendered the entire agreement void.

Plaintiff's argument that the revocation terminated only defendant's obligation not to compete is equally unpersuasive because the meaning of "non-competition" is unclear. The language of section 3(G) does suggest that the "non-competition" refers to defendant's obligation not to compete because the phrase "non-competition as so defined" immediately follows a description of defendant's prohibited business activities. (Pl.'s Ex. A 4.) Even if the revocation did terminate only defendant's obligation not to compete, plaintiff has not demonstrated a likelihood of success in establishing that defendant violated his obligation not to interfere with plaintiff's business relationships, as discussed above. As a result, plaintiff has not demonstrated a likelihood of success on the merits.

The entry is

Plaintiff's Motion for a Temporary Restraining Order is DENIED.

Dated: December 6, 2015

Nancy Mills
Justice, Superior Court

4

DSCI LLC VS TODD WOLF

UTN:AOCSsr -2015-0079862                 CASE #:PORSC-CV-2015-00440

| SEL VD | | REPRESENTATION TYPE | DATE |
|---|---|---|---|
| 01 000007876 ATTORNEY:ISRAEL, GLENN | | | |
| ADDR:100 MIDDLE ST PO BOX 9729 PORTLAND ME 04104-5029 | | | |
| | | PL          RTND | 09/29/2015 |
| F FOR:DSCI LLC | | | |
| 02 000001029 ATTORNEY:REMMEL, U CHARLES II | | | |
| ADDR:53 EXCHANGE ST PO BOX 597 PORTLAND ME 04112-0597 | | | |
| | | DEF         RTND | 09/29/2015 |
| F FOR:TODD WOLF | | | |
| 03 000000299 ATTORNEY:STEVENS, GRAYDON | | | |
| ADDR:53 EXCHANGE ST PO BOX 597 PORTLAND ME 04112-0597 | | | |
| | | DEF         RTND | 10/16/2015 |
| F FOR:TODD WOLF | | | |

Select  A=Atty, B=Bail, D=DckPr, E=Evt, F=Fin, J=Jdgm, O=Ordr, P=Prty, R=Review: